339 P.2d 746

**Emil ZANCANARO, Appellant,**

v.

**Norman N. CROSS, dba Cross Plumbing & Heating Co., Appellee.**

No. 6444.

Supreme Court of Arizona.

May 27, 1959.

Rehearing Denied June 23, 1959.

Gust, Rosenfeld, Divelbess & Robinette, and Frank E. Flynn, Phoenix, for appellant.

Palmer C. Byrne, Prescott, for appellee.

JOHNSON, Justice.

Emil Zancanaro, hereinafter referred to as defendant, appeals from a judgment awarded Norman Cross, dba Cross Plumbing & Heating Co., hereinafter referred to as plaintiff, as damages for breach of a written contract to install plumbing and fixtures in a tract of 50 homes to be built by defendant. Plaintiff cross-appeals on the amount of damages awarded it on the written contract, and also appeals the dis-

missal of its second cause of action on an oral contract to install outside water and sewer lines in the same tract. Defendant further appeals the dismissal of his counterclaim for damages allegedly caused by the negligence of plaintiff in performing his work.

Defendant planned to build a tract of 50 homes near Kingman, Arizona, with the Ware Construction Company as general contractor. Plaintiff submitted a bid to furnish fixtures and install plumbing in the 50 houses for $34,475. The bid form provided that it should become a binding contract upon acceptance, and contained a "Schedule of Conditions", with provisions for attorney's fees in case of suit. The contract price was made payable in certain percentages as the work progressed. The signatures of acceptance of defendant and of the general contractor were dated March 23, 1955.

Plaintiff and one Harlan Jost testified that at the time defendant accepted the contract he told them that he would like to build three houses a week at first, with a house a day thereafter. The homes were to be very much alike, so that most of the materials could be pre-cut in quantity.

Plaintiff was not aware that defendant's agreement with the general contractor recited that he had contracted with the Mohave County Board of Supervisors to build the 50 houses within three years, and that his financing arrangements with the Valley National Bank were to be on a basis of "ten and ten". The general contractor had agreed to any delay that might be caused by this requirement that each group of ten houses must be sold, thus substituting mortgagors, before the next group of ten could be financed.

Defendant's contract with plaintiff made no reference to these arrangements, nor did it make any reference to his agreement with the general contractor.

Construction was commenced almost immediately, with plaintiff beginning his work in each house as it was ready. Defendant apparently felt there would be no delay in construction, for on March 26, 1955, he placed an order for windows for the entire 50 houses. Plaintiff had ordered the plumbing fixtures directly from the manufacturer in carload lots of 50; this had been the basis of his bid price and was much less costly than buying fixtures in smaller quantities from a wholesaler.

After the first houses had been started, however, defendant advised plaintiff that he might not build the entire 50 houses and told him to cancel his orders for the fixtures in carload lots. Defendant then authorized plaintiff to order fixtures of lesser quality than had been specified, in order to lessen the increased cost of ordering in small quantities. The fixtures thus purchased still cost considerably more than those originally ordered.

By the end of August, 1955, 25 houses were being completed, with no evidence that the remaining 25 would be built. The forms had been stacked "as if for storage", and defendant had made no arrangements for further financing. In fact, there was no new construction until February of 1956, when six more houses were started. Plaintiff apparently announced that he was through, as there were no more houses to work on. His men finished with the last one of the 25 houses on September 29, 1955.

On December 31, 1955, plaintiff filed suit for breach of the written contract, to recover anticipated profits for the entire 50 houses. He also sued on an oral contract with defendant to install the utilities between the main sewer and water lines and the houses. Defendant counterclaimed, claiming damages as the result of plaintiff's allegedly faulty work in performance of both the written and oral contracts.

Defendant has made many assignments of error, all directed at the trial court's findings of fact and conclusions of law. We will deal with those which are pertinent here.

### The Written Contract

■ In the written contract plaintiff promised to install the plumbing and fixtures in each of the houses in defendant's 50-home tract. Obviously he could not do so unless houses under construction were in existence. Thus the contract also contained a necessarily implied promise by defendant that those houses would be built. An implied promise arising out of the expressed provisions of the contract is as much a part of the contract as a written one, and is subject to the same penalties for breach. Gates v. Arizona Brewing Co., 54 Ariz. 266, 95 P.2d 49.

■ The contract contained no date by which the houses were to be under construction, nor did it contain a completion date. It merely provided that the construction by the owner or building contractor "will proceed in the usual manner, without delay and as rapidly as similar buildings are constructed." Where no time is specified within which a promise must be performed, a reasonable time is implied. United States v. Smith, 94 U.S. 214, 24 L. Ed. 115; see Shimmon v. Moore, 104 Cal. App.2d 554, 232 P.2d 22. Reasonable time is ordinarily a question of fact; here the defendant does not assign as error the trial court's finding that a reasonable time for the construction of such a 50-house tract would be five to six months.

■ Defendant breached his implied promise to have the entire tract of 50 houses ready for the plumbing and fixtures within a reasonable time when he ceased construction at the end of six months, with only 25 homes completed. As there was no evidence showing that plaintiff was re-

sponsible for this, the trial court's finding of fact as to the reason for defendant's breach is not important.

■ Defendant assigns as error the trial court's finding that the contract provides that time is of the essence, contending that the provision did not apply to construction of the houses but only to the payment of money. But whether or not the provision that "Time is the essence of this contract" did apply to every promise in the contract is here immaterial. A "time is of the essence" provision operates only to give a minor breach as to timely performance the legal effect of a material breach; see Corbin on Contracts, § 713, Vol. 3, p. 797. Defendant's breach in the instant case was a material one in and of itself. Plaintiff was not obligated to wait indefinitely until defendant decided to resume construction.

One of the remedies available at common law upon a material breach of contract is the right to cease performance and recover the profits which would have been made had the entire contract been performed. This was the basis of plaintiff's claim. However, defendant contends that plaintiff's remedies for breach of contract were limited by a provision that

" * * * if there is any unusual delay in the construction of the building at any time the plumbing contractor may, at his option, by notifying the other parties hereto, claim reasonable additional compensation which shall be determined solely by the plumbing contractor, which said reasonable additional compensation the other party or parties hereto agree to pay, or, be relieved from all obligations to commence or continue said work any further, as the case may be, and be entitled to recover for the proportionate part of the work done, if any, without completion of this contract, and the plumbing contractor shall be in no way liable for any damages whatsoever by reason of his refusal to start or continue such said work."

■ The parties to a contract may specify certain remedies which may be used in case of breach. They may in addition make such a provision the exclusive remedy or remedies, barring all others which would otherwise be available. To obtain this result, however, the intent of the parties must be made clear. Smith v. Quivira Land Co., 153 Kan. 794, 113 P.2d 1077.

In the instant case we are not convinced that the provision quoted above operates to bar plaintiff from other possible remedies for defendant's breach, even assuming that it would fall under the semantic category of "unusual delay" rather than that of some stronger expression.

■ The clause provides that the plumbing contractor "may, at his option" do certain things, but it does not provide that he may not do anything else. It provides that in the event of unusual delay the plumbing contractor may cease work and not be liable in damages for so doing. This is to protect him in the event that the delay might be judicially determined to be a minor breach rather than a material one. Ordinarily the victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him; the victim of a material or total breach is excused from further performance; see Corbin on Contracts, § 946, and 12 Am.Jur., Contracts, § 389. However, there is no provision absolving the owner or builder of liability for damages in the event that such delay is a material breach on his part. The ordinary common-law remedies were retained, and plaintiff was entitled to sue for profits on the entire contract.

Plaintiff contracted to furnish and install the plumbing and fixtures in the 50-house tract for $34,475. At the time he bid on the job plaintiff estimated that he would make a profit of $5,688.

Plaintiff's evidence, uncontested by defendant, showed that he spent a total of $17,336.73, including $1,025 in preparatory work for the entire job. It also included the $1,796.75 difference between the cost of the fixtures in the original lots of 50 and the prices for which they were finally bought in small lots. This item of damage was taken into consideration by the trial court, and while defendant complains that it may not have been within the scope of the pleadings he has not assigned such as error.

From these factors it is a simple matter to determine the net actual cost chargeable to plaintiff on his performance of the first half of the contract. The difference in the cost of the fixtures should be deducted from the amount spent by plaintiff, and one-half of the preparatory cost of $1,025 for the entire job ($512.50) should be charged to the second 25 houses and thus deducted. The resulting net cost figure should then be doubled, as it can reasonably be assumed that the costs on the second 25 houses would have been the same had the contract been completed within the reasonable time of six months. This total can then be subtracted from the contract price to determine the amount of plaintiff's lost profit.

There would seem to be no deduction for time and trouble saved, since plaintiff spent as much time on the job completing half the contract as should have been taken for completion of the entire contract. Defendant showed that plaintiff had been paid $670.24 over the amount of his actual expenditures, so a credit should be given in that amount on the damages due to plaintiff.

Plaintiff's lost profit damages are thus computed:

| | |
|---|---|
| $17,336.73 | Total expenditures of plaintiff |
| −1,796.75 | Less additional cost of fixtures |
| − 512.50 | One-half of preparatory work credited to houses not built |
| $15,027.48 | Net cost of performing one-half of contract |
| $15,027.48 | |
| x2 | |
| $30,054.96 | Cost of performing entire contract (50 houses) |
| $34,475.00 | Contract price |
| −30,054.96 | Less cost of performance |
| $ 4,420.04 | Profit |
| − 670.24 | Previously paid plaintiff by defendant |
| $ 3,749.80 | Net damages due plaintiff |

The contract provided that in the event of suit there would be an additional sum due for attorney's fees, computed at 30% of the first $100 plus 20% of the balance due. Thus the attorney's fees due to plaintiff from defendant, on the basis of damages due of $3,749.80, amount to $759.96.

These amounts are higher than the trial court's computation of $2,500 lost profits and $510 attorney's fees. They have been determined, however, from the same evidence which was considered by the trial court. Where the judgment has been properly rendered, but for an incorrect amount, this court may do justice without remanding the case for a new trial by modifying the amount of the judgment. Barbara Development Corp. v. Jordan, 37 Ariz. 497, 295 P. 782; Farnsworth v. Hubbard, 78 Ariz. 160, 277 P.2d 252.

### The Oral Contract

Plaintiff contends that the trial court was in error in dismissing its second cause of action for breach of an oral contract to put in the sewer and water lines between the mains and the outside connections to the houses in the tract. The agreement was shown to be one to pay a certain price per foot for each of the several types of pipe installed.

Plaintiff alleged that the oral contract was for $5,500. At the trial plaintiff gave evidence of the per footage rate it was to be paid for installing each kind of pipe, and that the work it had done totalled about $18,000 at those rates. It was shown that defendant had paid plaintiff about $19,000 on the oral contract.

Plaintiff may very well have been entitled to the profits he would have made had the entire oral contract been completed, but the trial court's finding that he failed to establish proof of damages must stand, as there is sufficient evidence to support it. Plaintiff did not show the actual cost to himself, in labor and materials, of the pipe installed, nor did he show the amounts and varieties of water and sewer pipe necessary to complete the planned work in the tract. He gave no basis for determining what his prospective profits would have been, and so failed to prove them. The second cause of action was properly dismissed.

### Defendant's Counterclaim

Defendant contends that the trial court was in error in dismissing his counterclaim for failure to establish damages

due to the allegedly faulty work of plaintiff.

Defendant alleged that plaintiff failed to backfill some of the ditches he had dug to lay pipe. Plaintiff testified that defendant had told him not to bother, because the person levelling the lots would fill them in anyway. The evidence showed that defendant in fact had never paid any additional amount for backfilling plaintiff's ditches, and thus had suffered no damages.

Defendant also alleged that plaintiff's faulty work in installing the indoor pipes had necessitated furring out in several of the houses. Furring out is a process whereby small strips of wood are nailed to the skeleton of a wall in order to increase its inner dimensions, thus accommodating inner fixtures which are out of position. The trial court found that defendant had failed to prove that plaintiff was responsible for any pipe which may have been out of line.

The pipes could easily have shifted during the pouring of the concrete floors, and defendant did not establish that it was the responsibility of plaintiff to prevent such a shifting.

This court has often held that we will not disturb the findings of the trier of fact, in this instance the trial court where there is evidence to support them. Defendant failed to establish his counterclaim.

The judgment in favor of plaintiff on his first cause of action, the written contract, is modified to the sums of $3,749.80 damages and $759.96 attorney's fees. As so modified, it is affirmed. The judgments of dismissal of plaintiff's second cause of action and of defendant's counterclaim are also affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL, and BERNSTEIN, JJ., concurring.