526 P.2d 757

**Carl H. CORDS, Appellant,**

v.

**WINDOW ROCK SCHOOL DISTRICT NO. 8, APACHE COUNTY, Arizona, Marie Lincoln, Joe Watson, Leo Haven, Lester Lee and Thomas Lynch, as members of the Board of Trustees of Window Rock School District No. 8, Apache County, Arizona, Appellees.**

**No. 1 CA-CIV 2114.**

Court of Appeals of Arizona, Division 1.

Sept. 26, 1974.

Rehearing Denied Nov. 1, 1974.

Review Denied Dec. 10, 1974.

---

Tupper, Rapp, Salcito & Schlosser, P.A. by Daniel R. Salcito, Phoenix, for appellant.

J. Kendall Hansen, Apache County Atty., St. Johns, for appellees.

## OPINION

HATHAWAY, Chief Judge.

Appellant Carl H. Cords appeals from a denial of his application for a Writ of Mandamus seeking that the court direct the defendant Board of Trustees of Window Rock School District No. 8, Apache County, to issue him a teaching contract for the 1969–70 school year.

The facts, taken in a light most favorable to upholding the judgment, are as follows: In October, 1967, plaintiff, a tenured teacher, requested and was granted a sabbatical leave of absence pursuant to A.R.S. § 15–444.02(D). In his request plaintiff specified that he sought to attend the University of the Americas, in Mexico City, D. F., Mexico during the 1968–69 school year to obtain a master's degree in history. He stated that if the request was granted he would specialize in the history, culture and civilization of pre-Columbia Meso-America. Shortly thereafter, the Board of Trustees voted unanimously to grant his request subject to conditions outlined in the Board's Policy Manual and Arizona statutory law regarding sabbatical leaves. Plaintiff thereafter signed a contract with the school district for the 1968–69 school year in which the district agreed to pay him one-half of his normal salary in accordance with A.R.S. § 15–444.02(D)(3).

Plaintiff enrolled in the University of the Americas in June, 1968, but soon terminated his studies and returned to Arizona because of ill health. He enrolled in and completed a summer session at Northern Arizona University and then enrolled for the fall semester but decided not to complete it. Until January, 1969, the district had no knowledge that plaintiff was not attending the University of the Americas and plaintiff had continued to receive his salary pursuant to the sabbatical contract despite the fact that the district's written policy regarding illness while on sabbatical reads as follows:

"Incapacitation of the employee while on sabbatical must be reported to the Board of Trustees by registered mail within a two week period. Sick leave benefits shall apply to an employee on sabbatical leave."

Plaintiff admitted that he had been aware of the district policy regulating sabbatical leaves of absence. It should also be noted that his uncompleted and unauthorized study at Northern Arizona University did not involve the history, culture and civilization of pre-Columbian Meso-America, the subject which the Board of Trustees had authorized him to study at the University of the Americas.

In January, 1969, after he had decided not to continue at Northern Arizona University, he first notified district superintendent George E. Burns of his decision not to complete his sabbatical.[1] During this conversation, plaintiff asked that he be restored to a full-time teaching position for the remainder of the school year. Superintendent Burns informed him that none were available and advised him that, in his opinion, the sabbatical contract would either have to be honored or cancelled. Plaintiff asked that he be allowed to substitute teach on a day-to-day basis as needed and in his spare time do independent work related to Indian culture. While telling plaintiff that there was a good possibility that he could substitute, Mr. Burns advised him that a resignation from his sabbatical contract would in all probability terminate his tenure and his status as a continuing teacher with the district.

At a second meeting with plaintiff during January, Mr. Burns again advised plaintiff that his resignation from his duties under the sabbatical contract could very possibly result in a forfeiture of his tenure rights and status as a continuing teacher. Plaintiff in no way disagreed with this opinion and in fact discussed how to effect a cancellation of the sabbatical contract. Mr. Burns advised him that it would have to be in writing and formally presented to the Board of Trustees. Mr. Burns also told plaintiff that the district administration felt that he had violated his sabbatical contract when he left the University of the Americas without notifying the district and that the district could possibly sue him to recover salary paid pursu-

1. In this letter to the Board of Trustees, discussed infra, plaintiff stated that he was discontinuing his studies because they were a "waste of time" in that he was not gaining any knowledge.

ant to the sabbatical contract. Mr. Burns advised plaintiff that if he resigned his position with the district, the Board of Trustees could probably be persuaded not to seek recovery of the salary paid. Mr. Burns testified that he felt that he and plaintiff had reached a mutual agreement whereby the latter would resign and be allowed to substitute as needed and the board would not seek recovery of the salary he had been paid as of the date of his resignation.

On January 28th, plaintiff tendered a letter addressed to the chairman of the Board of Trustees in which he made it clear that he would no longer continue performing his obligations under the sabbatical contract. The board, at a meeting on January 28th, treated this letter as a resignation and so accepted it. Throughout the next three months, Mr. Cords was called from time to time as a substitute. He was not offered a contract to teach for the 1969–70 school year despite the fact that he had requested re-employment. He filed this action in July, 1969.

Plaintiff's primary contention is that the trial court erred in finding that the letter he had submitted to the school board on January 28th was a resignation.

■ It is settled that ordinary principles of contract law apply to school district-teacher employment contracts subject to pertinent statutory provisions which are deemed included in each contract and neither party to such a contract can unilaterally disregard the same with impunity. Carlson v. School District No. 6 of Maricopa County, 12 Ariz.App. 179, 468 P.2d 944 (1970). We have found no statutory authority specifying the conduct and/or words required for a teacher to validly terminate his contract with a school district,[2] and therefore we will proceed under general principles of contract law.

■ The evidence shows that plaintiff intended to and did abandon his sabbatical teaching contract. Abandonment, a matter of intent, can be inferred from the conduct of the parties and the attendant circumstances. Kolberg v. McKean's Model Laundry & Dry Clean. Co., 9 Ariz.App. 549, 454 P.2d 867 (1969). While plaintiff's letter of January 28th to the Board of Trustees did not contain the. word "resignation", it did state, "I regret that I have been unable to complete my sabbatical contract but for the reasons given I did not." [3] His actions, including his discussions with Superintendent Burns, show he no longer desired to perform under the contract and that, in fact, he was no longer performing.

In King Realty, Inc. v. Grantwood Cemeteries, Inc., 4 Ariz.App. 76, 81, 417 P.2d 710, 715 (1966), the following rule was stated:

"Where the acts of one party inconsistent with the existence of a contract are acquiesced in by the other, the contract will be treated as abandoned."

■ The school board's acceptance of plaintiff's "resignation" letter may be looked upon as an acquiescence in plaintiff's abandonment of his contract. The evidence supports a finding that plaintiff and the board mutually abandoned the sabbatical leave of absence contract.

Plaintiff, however, argues that his intent at all times was merely to obtain the district's consent to the termination of his sabbatical status with pay without forfeiting his right to re-employment as a continuing tenured teacher. See A.R.S. § 15–251 et seq.

"I never felt my status would be affected at any time, the fact that I was hired as a substitute teacher and did substitute quite frequently and as I have already taught in the system for 10 years, I

---

2. The only statutory provision pertaining to resignation of a teacher is A.R.S. § 15–258, as amended, which provides that resignation from a contract without prior board approval shall be deemed an unprofessional act and will render the resigning teacher subject to suspension or revocation of his teaching certificate.

3. Plaintiff's stated reasons for non-performance clearly would not excuse performance. Although he had been ill while in Mexico, he recovered upon his return to Arizona.

could not anticipate that I had resigned from the school district per se.

I felt that I resigned from the sabbatical leave and because I felt I was not entitled to receive the half pay because by this time I had made up my mind that I would not return to NAU and this was another reason that I talked to Mr. Burns.

I explained to him that I was not entitled to this and I would like a chance for a position which was not open and then I suggested the substitute teaching for the balance of the school year."

Plaintiff is in effect arguing that he and the district modified his contract by allowing him to do independent research and substitute teach for the remainder of the school year without prejudice to his tenure rights. The district did state in its letter accepting plaintiff's "resignation" that it would place him on the "teacher substitute list" for the remainder of the year.

■ The testimony of Superintendent Burns, however, completely contradicts plaintiff's version of the facts and since it supports the judgment, we must accept it as true. Superintendent Burns stated that he and plaintiff had orally agreed that plaintiff would resign from the district and in return the administration would ask the Board of Trustees not to sue plaintiff for salary he had received after he had returned from Mexico. Mr. Burns repeatedly warned plaintiff that this resignation would result in a termination of his employment with the district and therefore a termination of his tenure rights as a continuing teacher. Plaintiff, according to Superintendent Burns, never disputed this but accepted it as a "necessary evil." Within a few days after their second conversation, plaintiff submitted the letter stating that he would no longer continue his sabbatical.

The evidence justifies a finding that plaintiff was fully aware of the consequences of his course of action. We agree with the following reasoning of the trial court:

"Having been warned that resignation of the sabbatical contract would terminate the Plaintiff's tenure rights, it seems ludicrous to contend that a teacher having resigned a day or two after the warning can now maintain that he wasn't aware of the consequences of his resignation."

■ Plaintiff contends that because the evidence establishes that he was not informed of the school board's acceptance of his resignation until April, 1969, his contract was still in effect as of March 15 and therefore automatically renewed pursuant to A.R.S. § 15–252. We reject this argument because substantial evidence shows that the district's letter accepting plaintiff's resignation was sent on February 3, 1969. Plaintiff never denied receiving it.

■ Plaintiff's next argument, that he was entitled to a hearing before the district could dismiss him, must be rejected due to the substantial evidence that he knowingly and voluntarily relinquished his right to ·re-employment as a continuing tenured teacher. An involuntarily dismissed continuing teacher is entitled to a hearing—not a teacher who abandons or resigns his contract. A.R.S. § 15–254. Plaintiff has cited no authority to the contrary.

Plaintiff finally complains that the decision below violated A.R.S. § 15–444.02 which governs sabbatical leaves of absence. He cites subdivision E of that statute which provides:

"E. If leave is granted, all rights of tenure, retirement, accrued leave with pay, salary increments and other benefits provided by law shall be preserved and available to the applicant after the termination of the leave of absence."

■ He argues that the word "termination" encompasses termination by resignation or abandonment. While on sabbatical leave, a teacher is still under contract with the district in the same manner as if he were teaching in the district. The rights of a tenured teacher are dependent upon his continued performance each year

under his contract. When a teacher and a district mutually abandon this contract, they abandon any rights which accompany it particularly when the teacher is fully aware of the consequences of abandonment. A.R.S. § 15–444.02(E) permits the taking of a sabbatical leave of absence without penalty. The teacher upon a successful completion of his sabbitical leave, would return with the same rights and status he would have had if he had taught in the district during the year. It was not intended to allow the teacher to cease performance under his contract, enter into an agreement to terminate the contract and the rights accompanying it, and later avoid the obvious consequences of such conduct.

Affirmed.

KRUCKER and HOWARD, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).