GWENDOLYN BURRIS, Plaintiff-Appellant, *v.* SCHOOL BOARD DISTRICT NUMBER 189, Defendant-Appellee.

Fifth District   No. 78-83

Opinion filed March 22, 1979.

Paul M. Storment, Jr., Ltd., of Belleville, for appellant.

Edward Neville, of East St. Louis, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff Gwendolyn Burris brought an action for damages for breach of her teaching contract. The Circuit Court of St. Clair County entered judgment for the school district after trial before the court. On appeal, plaintiff contends she is a tenured teacher in School District 189 and that the district wrongfully refused to reinstate her to full-time teaching duties after her leave of absence granted for one year in February 1962. Defendant school district asserts her claim is barred by the statute of limitations.

In 1962, plaintiff was a full-time teacher who had acquired contractual continued service in School District 189. (Ill. Rev. Stat. 1961, ch.

122, par. 24—11.) On February 1, 1962, plaintiff requested a one year's leave of absence for reasons of health. The board granted the request. In January of the following year, plaintiff wrote the board, "I requested and was granted sick leave. I am now ready to return to a teaching position at the beginning of the second semester. I am having [a] doctor's statement sent to your office immediately. Thanks for your consideration." Although no medical document was forthcoming, we construe plaintiff's letter as a request to resume active teaching status.

Plaintiff was not reinstated as a full-time teacher. Instead, she was given substitute teaching assignments. There is conflicting evidence as to when she began accepting substitute duties. Defendant maintained that it was not until 1966, but plaintiff testified that it was as early as 1963.

There ensued correspondence between defendant and plaintiff's family and physician concerning plaintiff's status. However, absent any evidence that the doctor or family members were acting as plaintiff's agents in communicating with the board, we do not construe their opinions or statements as binding on either party. We similarly decline to impute notice to plaintiff of the board's intent from its letters to third persons. We proceed on the basis that the relevant chronology fixes plaintiff's leave of absence from 1962 to 1963 and her request to resume full-time duties in January 1963. Payroll records of the defendant establish that plaintiff was employed as a substitute teacher during the school year 1966 and periodically thereafter. Plaintiff testified that by September 1967, she felt she was not going to be rehired in a full-time position and went to Chicago, where she taught in a Chicago public school, apparently, until March 1968. Plaintiff also maintained that prior to her departure she informed an assistant principal in the district of her continued desire to return to full-time status there. According to plaintiff, the assistant principal assured her that if she elected not to stay in Chicago and came back to East St. Louis, she would be restored to her position. The assistant principal who allegedly made the assurances denied at trial that the conversation ever occurred. Plaintiff returned to East St. Louis and accepted various substitute teaching assignments from 1972 through 1974. Plaintiff wrote to defendant on November 7, 1967, July 25, 1972, and August 30, 1973, renewing her requests for a full-time position.

Plaintiff filed this action for breach of contract on October 8, 1974, 11 years after her leave of absence expired and her request to return to full-time teaching status; 7 years after she realized she would not be offered a full-time position by defendant; and 8 years after her documented acceptance of substitute assignments.

The trial court ruled that the statute of limitations on unwritten contracts barred plaintiff's claim. (Ill. Rev. Stat. 1977, ch. 83, par. 16.) Plaintiff initiated this suit as a contract action on the theory that the School

Code, in establishing continuing contract status, created a contract between plaintiff and defendant although no contract document actually existed.

We have heretofore expressed some reservation as to the place of contract law vis-a-vis teacher tenure statutes. (See *Littrell v. Board of Education*, 45 Ill. App. 3d 690, 698, 360 N.E.2d 102, 107 (5th Dist. 1977).) Although *McNely v. Board of Education*, 9 Ill. 2d 143, 137 N.E.2d 63 (1956), may be read to suggest that tenured teachers enjoy private contractual rights by virtue of the School Code, the general rule is that legislative acts fixing terms or tenure of employment of public employees do not create private contractual rights. (*Dodge v. Board of Education*, 302 U.S. 74, 82 L. Ed. 57, 58 S. Ct. 98 (1937); *Crumpler v. County of Logan*, 38 Ill. 2d 146, 230 N.E.2d 211 (1967).) We need not resolve the question, however, because the outcome of this case would not differ even if plaintiff's action properly sounded in contract.

Several remedies were available to plaintiff, had she actively sought reinstatement. The School Code provides a hearing procedure for tenured teachers whose "contracts" are breached or not renewed. At all times relevant to this action, the Code required a discharged tenured teacher to request a hearing if she wanted to contest her dismissal.[1] The Code also imposed an obligation on the school district to notify the teacher of the proposed discharge and the reasons therefor. It is uncontroverted that defendant failed to give plaintiff the required notice but it is also clear that plaintiff knew she had not been rehired. Defendant's failure to follow statutory procedure did not estop plaintiff from asserting her claim administratively. Faced with defendant's inaction, plaintiff could have initiated administrative action of her own pursuant to

---

[1] Section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12, current version at Ill. Rev. Stat. 1977, ch. 122, par. 24—12) established certain procedures for dismissing tenured teachers because of declining enrollment and further provided that "[i]f the dismissal or removal is for any other reason or cause it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, *if a hearing is requested in writing by the teacher within 10 days* after the service of notice as herein provided. Written notice of such charges shall be served upon him at least 60 days before the effective date of his dismissal or removal ° ° ° *The request by the teacher for a hearing or for a bill of particulars may be made by certified or registered mail* ° ° °" (Emphasis added.)

The foregoing procedures were revised by Public Act 79-561, section 1, effective August 26, 1975, to remove from a discharged teacher the burden of requesting a hearing. "If a dismissal or removal is sought [for any reason other than declining enrollment], the board must first approve a motion containing specific charges by a majority vote of all its members. Unless the teacher within 10 days requests in writing of the board that no hearing be scheduled, the board shall schedule a hearing on those charges before a disinterested hearing officer ° ° °" (Ill. Rev. Stat. 1975, ch. 122, par. 24—12.) These provisions were carried forward into the current School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—12).

section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12).

■■ In addition to administrative relief, certain other remedies were available to plaintiff had her concerns been timely asserted. We have held that mandamus is a proper remedy available to one claiming to be a tenured teacher to compel the hearing required under section 24—12 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—12; *Lenard v. Board of Education*, 26 Ill. App. 3d 188, 324 N.E.2d 657 (5th Dist. 1975)).

Plaintiff's failure to pursue legal, equitable, and administrative remedies in a timely manner is compounded by her abandonment of her claim to tenured status. Although from time to time plaintiff requested full-time reinstatement, she accepted substitute teaching assignments, moved to Chicago in 1967 and taught there, and then returned to the district where from 1972-1974 she accepted additional substitute assignments. Plaintiff testified that her move to Chicago was occasioned by her conclusion in the fall of 1967 that she was not going to attain a full-time position with defendant. While we do not isolate a specific time at which abandonment occurred, plaintiff's assumption of teaching duties in Chicago is dispositive.

■■ Abandonment of contract rights by a tenured teacher was discussed in *Cords v. Window Rock School District*, 22 Ariz. App. 233, 526 P.2d 757 (1974). The plaintiff in *Cords* had been granted one year's sabbatical leave. He had acquired tenure prior to his leave and claimed that despite his failure to complete sabbatical studies or resume full-time teaching the following semester, he was entitled to reinstatement. During the school year following the sabbatical, he had accepted substitute assignments before filing suit based on an Arizona statute continuing tenure during a sabbatical year. The statute was interpreted by the court to extend tenure only if the teacher returned to full-time service after completing sabbatical studies or notifying the board through administrative procedure of his failure to do so. In the case before us, plaintiff Burris neither returned to work nor followed proper administrative procedure. She abandoned her claim to continuing contract status by failing to assert it.

■■ "Abandonment, a matter of intent, can be inferred from the conduct of the parties and the attendant circumstances. (*Kolberg v. McKean's Model Laundry & Dry Cleaning Co.*, 9 Ariz. App. 549, 454 P.2d 867 (1969).) * * * In *King Realty, Inc. v. Grantwood Cemeteries*, 4 Ariz. App. 76, 81, 417 P.2d 710, 715 (1966), the following rule was stated: 'Where the acts of one party inconsistent with the existence of a contract are acquiesced in by the other, the contract will be treated as abandoned.'" (*Cords v. Window Rock School Dist.*, 22 Ariz. App. 233, 236, 526 P.2d

757, 760 (1974).) Burris' acceptance of substitute assignments and her active pursuit of employment in Chicago can be considered acquiescence in the Board's failure to rehire her, and hence, abandonment.

In *Brown v. Board of Education*, 38 Ill. App. 3d 403, 347 N.E.2d 791 (5th Dist. 1976), we held that a tenured teacher's temporary reduction in class load did not terminate her tenured status. The facts in *Brown* are critically distinguishable from the case at bar. In *Brown*, the reduction in teaching load was partial, temporary and followed by a year of resumed full-time assignments. When Brown was notified by the Board that she would not be rehired, she sent a written request for a hearing. After five months passed without either a response or a hearing, Brown filed suit seeking a declaratory judgment and reinstatement. Brown aggressively pursued her administrative remedies by requesting a hearing whereas Burris did not. While Brown's suit was pending in court, she obtained employment elsewhere. Plaintiff's acceptance of alternative employment is not analagous. Her failure to assert a claim to full-time status precludes us from considering her substitute teaching as an attempt to mitigate damages.

Plaintiff's cause of action accrued when she was denied reinstatement to a full-time position, 11 years before this action was brought. Courts in other States have applied the doctrine of laches to bar a tenured teacher's action for reinstatement when an unreasonable period had elapsed between discharge and the plaintiff teacher's complaint. In several cases, the delay was decidedly shorter than the 11-year period presented in the instant situation. (See *State ex rel. Calamari v. Orleans Parish School Board*, 189 La. 488, 179 So. 830 (1938) (delay of one year, less four days); *State ex rel. McMurray v. Orleans Parish School Board*, 189 La. 502, 179 So. 834 (1938) (delay of about one year); *Fontenot v. Evangeline Parish School Board*, 185 So. 104 (La. App. 1938) (delay of about two years); *Williams v. Livingston Parish School Board*, 191 So. 143 (La. App. 1939) (delay of 11 months); *State ex rel. Eberle v. Orleans Parish School Board*, 221 La. 243, 59 So. 2d 177 (1952) (delay of one year, less three days).)

Laches was similarly invoked in *Fields v. Rapides Parish School Board*, 231 La. 914, 93 So.2d 214 (1957), to bar a tenured teacher's action for reinstatement when she had waited slightly less than three years to commence suit. The court based its decision on public policy considerations:

> " 'Sound public policy requires that an employee of a public body who claims to have been illegally discharged should press his claim for reinstatement with diligence and without unnecessary delay. The rule that laches on the part of such public employee will bar his claim for reinstatement is not based on any law of prescription of limitation of actions, but it arises from reasons of public policy.

The processes of government must go on and employees and officials must be paid out of public revenue for carrying on the functions of government. Where a discharged employee sits idly by for an unreasonable length of time without pressing his claim for reinstatement, those charged with the duty of securing the necessary working personnel cannot hold up the administrative functions of government awaiting a decision on the part of the discharged employee as to what course he will take. * * *' " 231 La. 914, 919, 93 So. 2d 214, 215.

■ We need not base our decision on laches, however, as plaintiff's claim is clearly barred by operation of the statute of limitations. Section 15 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 16) provides that "actions on unwritten contracts, express or implied * * * and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

G. MORAN, P. J., and JONES, J., concur.