NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

LORDA MARIE JUSTINN HORST, *Petitioner/Appellee,*

*v.*

RUSSELL CHARLES HORST, *Respondent/Appellant.*

No. 1 CA-CV 20-0051 FC

FILED 12-15-2020

Appeal from the Superior Court in Maricopa County
No. FN2018-093743
The Honorable Andrew J. Russell, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

David Miles McGuire Gardner, PLLC, Tempe
By Spencer Schiefer
*Counsel for Petitioner/Appellee*

Overstreet Law Office, Phoenix
By Eric L. Overstreet
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

¶1             Russell Horst ("Husband") appeals from the dissolution decree's property provisions concerning his marriage to Lorda Horst ("Wife"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2             Husband and Wife married in August 1993. Shortly before their marriage, they purchased a home in Chandler (the "Chandler Home"), taking title as joint tenants with the right of survivorship. In 2011, Husband and Wife informally separated and began living apart, with Husband remaining in the Chandler Home. In August 2018, Wife petitioned for dissolution. Shortly after the dissolution proceedings commenced, the parties' focus narrowed to whether the Chandler Home should be characterized as joint or separate property. Wife asserted the Chandler Home's status as joint property never changed, she retained a one-half interest in the property as a result, and the property was subject to an equitable division.

¶3             On the other hand, Husband claimed that when the parties separated in 2011, they agreed otherwise (the "2011 Agreement"). In the 2011 Agreement, Husband claimed Wife agreed to transfer or relinquish her interest in the Chandler Home. In exchange, Husband would pay her share of the outstanding mortgage on the home and give her half the remaining equity—approximately $24,000. Husband asserted this agreement was enforceable, and the Chandler Home was, therefore, his separate property.

¶4             Before the trial, both parties submitted proposed factual findings and legal conclusions. The court held a one-day trial on the dissolution petition in October 2019. During the trial, the court admitted several exhibits into evidence, including: (1) a report estimating the Chandler Home's current value at $288,000; and (2) two email exchanges

between Husband's father and Wife in late November and early December 2011.

¶5           In the November 2011 email exchange, Husband's father stated the following:

> I do want to talk with you about your equity in the house. . . . As perhaps you are aware, the appraisal came in [at] only $117,000. Somehow I want you to get your share as soon as possible. In the meantime, I plan on paying off the mortgage via borrowing from my bank; that will get your name off the mortgage.

In the December 2011 email exchange, Husband's father stated that he had "gone thru[sic] the math on all the costs associated with paying . . . the mortgage[.]" After calculating the equity of the home and subtracting $5,150 in other debts Wife presumably owed, Husband's father stated:

> Therefore, your share of equity(less above costs) equal[s] $23,811.16. However, I think we should round it off to $24,000. . . . We don't intend to charge you and [Husband] beyond the first year . . . . Please let me know if you agree to all of the above.

Wife responded: "If you think it's fair, go ahead."

¶6           The court heard testimony from both Husband and Wife concerning the 2011 Agreement. Wife testified (1) Husband's father had agreed to pay the mortgage on the Chandler Home as a loan to both parties; (2) she refused an offer of payment made by Husband in 2011 because it was conditioned on an agreement to co-sign a loan for her funds; and (3) she refused Husband's request to sign a quitclaim deed concerning the Chandler Home in 2014. For his part, Husband testified his father acted as his representative in the November and December 2011 email exchanges. He also testified his father paid the mortgage in full in 2011 as an advance on Husband's inheritance. However, Husband claimed he could not secure financing to pay Wife for the value of her share of the home's equity. Husband testified that he requested Wife co-sign a loan to furnish payment, but she refused. Neither party asserted that they engaged in actions concerning the 2011 Agreement from 2014 until Wife filed the dissolution petition. After the hearing, the court took the matter under advisement.

¶7          In November 2019, the court issued the dissolution decree. In the decree, the court made the following findings and conclusions concerning the 2011 Agreement and the Chandler Home:

> [A]n agreement was reached in 2011 whereby Husband's father would pay off the parties' mortgage and Wife would receive approximately $24,000. . . . Husband testified that his father's agreement to pay off the mortgage constituted an advance against Husband's inheritance. That money was indeed used to pay off the mortgage, but the parties never completed their agreement – Wife never received the $24,000 . . . .
>
> Husband was unable to comply with the agreement's terms. The Court does not see a legal basis for terminating the joint ownership of the [Chandler Home] in 2011, because the terms of the parties' agreement were not satisfied. As such the 2011 agreement was not binding on these parties, Wife remains a co-owner of the [Chandler Home] and she is entitled to half of the equity in that property as of the date of service of the Petition for Dissolution.

The court found Wife's proposed division of assets in her pre-trial statement equitable and ordered: (1) Wife to keep her two retirement accounts, valued at approximately $85,000, (2) Husband to keep the Chandler Home as his separate property, and (3) Husband to pay Wife an equalization payment of $75,000 for her interest in the Chandler Home.

¶8          Husband subsequently filed a motion requesting a new trial under Arizona Rule of Family Law Procedure 83. The court summarily denied the motion, and Husband appealed from both the dissolution decree and the denial of the Rule 83 motion. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

A.    **The Court Correctly and Equitably Divided the Parties' Property.**

1. **The Court Did Not Err by Refusing to Find the 2011 Agreement Extinguished Wife's Interest in the Chandler Home.**

¶9          Husband first argues the court erred by concluding the 2011 Agreement was not binding on the parties. Husband asserts the court should have found the 2011 Agreement enforceable, determined that the

Chandler Home was Husband's separate property by operation of the agreement, and ordered that Wife was entitled to half the home's equity as of 2011, or approximately $24,000, plus interest. We review the validity and enforceability of a contract and the property characterization in a dissolution proceeding *de novo*. *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129, ¶ 10 (App. 2019) (validity and enforceability of a contract); *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000) (characterization of property).

**¶10**        As an initial matter, we note our review of this issue is complicated because both the superior court and the parties on appeal assume the 2011 Agreement constituted a valid written contract concerning real property. There is certainly reason to doubt this assumption. For example, the writings Husband submitted as evidence of the written terms of the 2011 Agreement are between Husband's father and Wife and do not mention Husband either as a party or beneficiary to the agreement. *See Savoca Masonry Co. v. Homes & Son Constr. Co.*, 112 Ariz. 392, 394 (1975) (for an enforceable contract to exist, there must be "an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent"). But given the posture of this appeal, we will assume, without deciding, the 2011 Agreement was a valid written contract concerning real property. Under the agreement's terms, Husband's father promised to pay Wife's share of the mortgage and reimburse Wife for her share of the Chandler Home's equity, or approximately $24,000, in exchange for Wife's promise to relinquish her interest in the property.

**¶11**        Here, the undisputed facts and the court's factual findings established that from at least 2011 to 2014, Husband failed to perform or adequately offer to fulfill the promise to pay Wife for her share of the Chandler Home's equity. On this basis, the court concluded that the 2011 Agreement was not binding upon the parties.

**¶12**        If the 2011 Agreement constituted a contract, then the question presented is whether Husband's failure to adequately render or offer to fulfill the promise to pay Wife within a reasonable period constituted a material breach excusing Wife from her obligations under the 2011 Agreement. If it did, the court was correct to conclude the 2011 Agreement was unenforceable against Wife and the Chandler Home retained its status as joint property subject to equitable division.

**¶13**        "Ordinarily the victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him; the victim of a material or total breach is excused from further performance." *Zancanaro v. Cross*, 85 Ariz. 394, 400

(1959) (citation omitted). The Restatement (Second) of Contracts ("Restatement") § 241 (1981), however, also recognizes that even a material breach may not justify the discharge of the non-breaching party from a contract if the breaching party cures within an adequate time. *See* Restatement § 242 cmt. a ("Ordinarily there is some period of time between suspension and discharge, and during this period a party may cure his failure."). To determine whether Wife was discharged from an obligation under the 2011 Agreement, we must consider: (1) whether Husband breached the express or implied terms of the 2011 Agreement; (2) if so, was the breach material; and (3) has the time for Husband to cure any material breach expired.

¶14        Because the terms of the 2011 Agreement omitted provisions concerning the time to perform or offer to perform, "a reasonable time is implied." *Zancanaro*, 85 Ariz. at 398. What constitutes a "reasonable time" is typically a question of fact. *Id.* But the superior court did not need to fix a particular time for reasonable performance to occur in this case. The failure to furnish or offer to provide payment for a simple contract to purchase an interest in the Chandler Home for nearly three years constituted a breach of the implied promise. *See Mahurin v. Schmeck*, 95 Ariz. 333, 340 (1964) ("What is a reasonable time is a question of fact for the trier of fact unless the facts are such that only one inference could be derived therefrom in which case it would become a question of law.") And that the time for performance was an implied, rather than express, promise is of no consequence in assessing breach. An implied promise arising out of the contract's expressed provisions is as much a part of the contract as a written one and is subject to the same penalties for breach. *See Zancanaro*, 85 Ariz. at 398.

¶15        Next, we consider whether the breach of the implied promise to perform within a reasonable time was material. Our supreme court has adopted the five-factor analytical framework from Restatement § 241 to assess whether a breach is material. *Found. Dev. Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446–49 (1990). But we need not engage in a lengthy analysis of these factors to conclude a material breach occurred here. The promise to pay Wife's share of the Chandler Home's equity went to the core of the 2011 Agreement and was the sole remaining benefit Wife could reasonably expect to receive. By failing to perform or offer to perform for nearly three years, Husband deprived Wife of that benefit. *See* Restatement § 241(a) (The "extent to which the injured party will be deprived of the benefit which he reasonably expected" is a significant circumstance in determining material breach.); *see also Zancanaro*, 85 Ariz. at 399 (concluding failure of builder to complete construction within a reasonable time was a material breach, in

part, because the other party "was not obligated to wait indefinitely until [the breaching party] decided to resume construction"). And there is no evidence that Husband ever explained his failure during that period or made any assurances to Wife concerning the payment. *See* Restatement § 241 cmt. e (significant circumstances in determining material breach include "likelihood that the failure will be cured" and "reasonable assurances of performance").

¶16 Husband far exceeded any reasonable period to cure his failure to perform or offer to perform within a reasonable time by making no efforts to do so for nearly three years. Accordingly, Wife's duties concerning the 2011 Agreement were discharged by Husband's uncured material breach of the 2011 Agreement.

¶17 A second legal principle militates against finding the 2011 Agreement enforceable. In this case, the uncontested facts established Husband and Wife mutually rescinded or abandoned the agreement, at a minimum, after Husband's attempted performance in 2014. During this time, both parties were aware that the other was not acting consistently with the 2011 Agreement. Husband had not given Wife her share of the equity for years, and Wife refused to execute an instrument transferring or disclaiming her interest in the Chandler Home. "Where the acts of one party inconsistent with the existence of a contract are acquiesced in by the other, the contract will be treated as abandoned." *King Realty, Inc. v. Grantwood Cemeteries, Inc.*, 4 Ariz. App. 76, 81 (1966); *see also Kolberg v. McKean's Model Laundry and Dry Cleaning Co.*, 9 Ariz. App. 549, 550 (1969) (concluding reasonable evidence supported superior court's finding that parties abandoned employment contract when an employee left after a disagreement, did not return, then filed breach-of-contract suit nine years later). "Abandonment, a matter of intent, can be inferred from the conduct of the parties and the attendant circumstances." *Cords v. Window Rock Sch. Dist. No. 8*, 22 Ariz. App. 233, 236 (1974). "Sometimes mere inaction on both sides, such as the failure to take any steps looking toward performance or enforcement, may indicate an intent to abandon the contract." Restatement § 283 cmt. a.

¶18 Here, Husband and Wife's inaction and their respective decisions to act inconsistently with the 2011 Agreement demonstrate an intent to abandon the agreement. As stated by our supreme court in *Wadell v. White*, 51 Ariz. 526, 535 (1938):

> Where a contract has been partly performed and further performance is abandoned voluntarily by both of the parties,

> there can be no recovery for what has been done under the contract by either party, unless such right of recovery is reserved by the parties at the time when such abandonment takes place, either by express or implied agreement.

*See also* Restatement § 283(2) ("An agreement of recission discharges all remaining duties of performance of both parties. It is a question of interpretation whether the parties also agree to make restitution with respect to performance that has been rendered."); *Bazurto v. Burgess*, 136 Ariz. 397, 399–400 (App. 1983) ("Where a contract is rescinded by mutual consent, the agreement of recission controls, and, unless the parties expressly reserve a claim for damages, there is an implied waiver of any such claims.").

**¶19**       For these reasons, on *de novo* review, we hold the superior court correctly concluded that the 2011 Agreement was not enforceable against Wife and that, as a result, the Chandler Home remained joint property subject to equitable division under A.R.S. § 25-318(A).

## 2. The Court Did Not Abuse Its Discretion by Dividing the Marital Property Equitably.

**¶20**       Citing our supreme court's decision in *Toth v. Toth*, 190 Ariz. 218 (1997), Husband argues that, irrespective of the enforceability of the 2011 Agreement, the court erred by refusing to order an unequal division of the marital property at issue—notably the Chandler Home. Husband also claims that equitable principles required the court to account for payment of Wife's share of the mortgage in 2011.

**¶21**       The division of marital property in dissolution proceedings is governed by A.R.S. § 25-318(A), which provides that the court must "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind[.]" "[T]he general principle is that 'all marital joint property should be divided substantially equally unless sound reason exists to divide the property otherwise.'" *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 13 (App. 2010) (quoting *Toth*, 190 Ariz. at 221). The superior court has broad discretion in this sphere, including "the specific allocation of individual assets and liabilities," and "we will not disturb a court's ruling absent a clear abuse of discretion." *Id.* at ¶ 14.

**¶22**       Regarding payment of the mortgage on the Chandler Home, it is not clear Husband was entitled to reimbursement for that contribution. Both parties testified that Husband's father, not Husband, paid off the mortgage on the Chandler Home directly. And there is no indication in the

written terms of the 2011 Agreement that Husband's father intended to be reimbursed for the payment. Thus, there appears to be substantial evidence that Husband's father intended payment of the mortgage to be a gift to the community—perhaps conditioned on the expectation that Wife would sell her interest in the property to Husband—despite Husband's claim at trial that his father only intended the payment as a gift to him.

¶23      But even assuming payment of Wife's share of the mortgage can be attributed to Husband, the record shows he was adequately compensated for that contribution in the court's division. It is undisputed that Husband was permitted exclusive occupancy and use of the Chandler Home for over seven years without Wife seeking rental or other value for her property interest. *Cf. In re Marriage of Inboden*, 223 Ariz. 542, 545, ¶ 12, n.3 (App. 2010) ("[W]hen making an equitable division of jointly held property upon dissolution of a marriage, the family court's obligation is to consider all factors that bear on the equities of the division[.]"); *see also* 20 Am. Jur. 2d Cotenancy and Ownership § 50, Westlaw (database updated Nov. 2020) (noting that in equitable proceedings, it may be permissible to offset contributions of the joint tenant against the "reasonable value of the occupancy and use," even when that tenant may not otherwise be liable for such benefits).

¶24      Moreover, by accepting Wife's proposed division of the contested marital assets, Husband received approximately $25,000 more than Wife.[1] And that figure cannot be attributed to any other contributions made by Husband because he submitted no evidence concerning additional expenses he paid concerning the Chandler Home. Given these facts, we cannot say the court's property division constituted an abuse of discretion.

---

[1]      By adopting Wife's proposed division of the contested assets, the court found the value of the home was $288,000, the figure arrived at by the uncontested valuation of the home. Adding this number to the sum of the value of Wife's retirement accounts, $86,976, leaves the total value of the contested assets at $374,976. Had the court divided this figure equally, each party would have received $187,488. However, by adopting Wife's division of the assets, Husband received $213,000 (the value of the Chandler Home minus a $75,000 equalization payment) and Wife received $161,976.33 (the sum of the equalization payment and her retirement accounts). Thus, husband received a little over $25,000 more than Wife.

**B.      Even Assuming the Court Made Inadequate Factual Findings and Legal Conclusions, Remand is Not Required Here.**

**¶25**      Next, Husband argues the superior court made insufficient factual findings and legal conclusions to evaluate the court's judgment concerning the 2011 Agreement correctly. Husband contends the court should have addressed each of his proposed findings of facts and conclusions of law on this issue and that its failure to do so was error. Husband also asserts the court's findings and conclusions failed to resolve disputed issues concerning the 2011 Agreement or adequately explain its conclusion that the 2011 Agreement was not binding. Whether a court made sufficient factual findings and legal conclusions presents a mixed question of fact and law that we review *de novo*. *Murphy Farrell Dev., LLP v. Sourant*, 229 Ariz. 124, 128, ¶ 13 (App. 2012).

**¶26**      The superior court must enter findings and conclusions when requested by a party before trial. Ariz. Fam. Law P. 82; *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 294, ¶ 7 (App. 2000). This requirement's primary purpose is to enable the appellate court to examine the bases for the superior court's decision adequately. *In re $26,980.00*, 199 Ariz. at 294, ¶ 7. "It must be clear how the court actually did arrive at its conclusions. Otherwise, there is no assurance that the court itself thought out each issue, and an appellate court cannot effectively review the decision-making process of the trial court." *Elliott v. Elliott*, 165 Ariz. 128, 132 (App. 1990) (quoting *Urban Dev. Co. v. Dekreon*, 526 P.2d 325, 328 (Alaska 1974)). However, the court is not required to detail every fact that supports its ruling. *Francine C. v. DCS*, 249 Ariz. 289, 296, ¶ 14 (App. 2020). Instead, it must make findings concerning the "ultimate facts" or at least those "essential and determinative facts on which the conclusion was reached." *Miller v. Bd. of Supervisors*, 175 Ariz. 296, 300 (1993) (quoting *Star Realty Co. v. Sellers*, 387 P.2d 319, 320 (N.M. 1963)).

**¶27**      At the outset, we reject Husband's contention that the court should have addressed each of his proposed findings and conclusions. The superior court's findings need only encompass the ultimate facts. *Miller*, 175 Ariz. at 300 (quoting *Elliott*, 165 Ariz. at 132). It need not make findings on undisputed matters, address every finding or conclusion proposed by a party, or consider those that conflict with the court's findings and conclusions. *See Gilliland v. Rodriguez*, 77 Ariz. 163, 168–69 (1954).

**¶28**      But even assuming the court made insufficient factual findings and legal conclusions in some respects, a remand is not warranted here. As this court recently affirmed, we "must tailor the proper remedy

[for] each case." *Francine C.*, 249 Ariz. at 299, ¶ 27 (alteration in original) (quoting *Miller*, 175 Ariz. at 300). Thus, although noncompliance with Rule 82 typically warrants remand for additional findings, an appellate court "may also decide an appeal without those findings if it is in a position to do so." *Id.* (quoting *Miller*, 175 Ariz. at 300). As stated in *Francine C.*,

> [I]n the rare case that does not turn on contested facts, if we can fully understand the issues raised without findings, we may affirm without findings. Where the record is so clear that the appellate court does not need the aid of findings, the court may waive such defect on the ground that the error is not substantial in that case.

*Id.* (citations omitted). Our conclusion that the court correctly refused to find the 2011 Agreement enforceable presents such a rare case for two reasons.

¶29 First, and as we noted above, the court's identifiable findings coupled with the undisputed facts, provide an adequate basis for this court to conclude that the 2011 Agreement was unenforceable. The court found that an agreement existed, it included a promise to pay Wife for her share of the Chandler Home's equity, and Husband's initial attempt to pay Wife was deficient. It is undisputed that Husband engaged in no further efforts to perform until 2014. After 2014, neither party attempted to enforce the agreement until Wife filed for dissolution.

¶30 Second, because our analysis and resolution of Husband's arguments concerning the 2011 Agreement turn upon questions of law, we are not bound by the superior court's conclusions on the issue. *See Zellerbach Paper Co. v. Valley Nat. Bank*, 13 Ariz. App. 431, 433 (1970) ("We are not . . . bound by the trial court's conclusions of law and may draw our own legal conclusions from the undisputed facts."). The adequacy of the superior court's conclusions in this case, therefore, does not control the result here.

## C. Husband is Not Entitled to a New Trial.

¶31 Finally, Husband argues the court abused its discretion by denying his Rule 83 motion for a new trial. Husband identifies three grounds on which he asserts the court should have granted the motion: (1) the court did not correctly consider the evidence presented concerning the 2011 Agreement; (2) Husband was denied a fair trial because the court hurried him through his case and appeared biased against his positions;

and (3) the court erroneously admitted evidence submitted by Wife and erroneously precluded evidence submitted by Husband.

¶32        Given our conclusions above regarding the 2011 Agreement, we reject Husband's first argument outright. As for Husband's assertions concerning the court's alleged bias and its evidentiary rulings, he did not present these arguments in his Rule 83 motion. Thus, these arguments are better characterized as arising out of Husband's appeal from the dissolution decree than from the court's denial of his motion for a new trial. We address each in turn.

¶33        Husband asserts the court exhibited bias against his positions by (1) prejudging the merits of the case during settlement discussions initiated by the court at the start of the trial and (2) rushing his case. "We presume that a judge is impartial, and 'the party seeking recusal must prove bias or prejudice by a preponderance of the evidence.'" *In re Aubuchon*, 233 Ariz. 62, 66, ¶ 14 (2013) (quoting *State v. Carver*, 160 Ariz. 167, 172 (1989)). "Bias and prejudice are evidenced by 'a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants.'" *Id.* (quoting *State v. Myers*, 117 Ariz. 79, 86 (1977)).

¶34        Husband's claims of bias are meritless. The court explained its rationale for initiating settlement discussions and expressing its opinion on the parties' claims. Its rationale does not show bias or prejudice. *See In re Guardianship of Steyer*, 24 Ariz. App. 148, 151 (1975) ("The fact that a judge may have an opinion as to the merits of the cause or a strong feeling about the type of litigation involved, does not make the judge biased or prejudiced."). There is simply no indication that the court was acting in bad faith by encouraging the parties to settle or expressed bias towards either party.

¶35        Husband's subjective impressions of the court's statements concerning the time left for trial also do not overcome the presumption of impartiality. *See Aubuchon*, 233 Ariz. at 67, ¶ 17; *Liteky v. United States*, 510 U.S. 540, 551 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). The record demonstrates that the court managed both parties' time appropriately to allow direct, cross, and redirect examination of their respective witnesses and closing arguments. For example, the court told Wife's counsel to keep cross-examination of Husband and her closing statement brief due to time constraints. And to the extent Husband's arguments imply the court denied him the opportunity to present his case adequately, he waived that claim

by failing to request additional time at trial. *See Henderson v. Henderson*, 241 Ariz. 580, 586, ¶ 13 (App. 2017) (arguments raised for the first time on appeal usually are waived). Thus, Husband has not presented sufficient evidence of bias to warrant relief.

**¶36** Turning to Husband's arguments concerning the court's evidentiary rulings, Husband does not explain how the rulings were erroneous and cites no authority to support his assertions beyond a single citation to Arizona Rule of Evidence 401 in his reply brief. Thus, Husband has failed to adequately present or argue these issues, and we need not address them. *In re J.U.*, 241 Ariz. 156, 161, ¶ 18 (App. 2016) ("We generally decline to address issues that are not argued adequately, with appropriate citation to supporting authority."); ARCAP 13(a)(7).

**¶37** But even if we were to address Husband's arguments and conclude the superior court erred in its evidentiary rulings, Husband would not be entitled to relief absent a showing of prejudice. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 543, ¶ 33 (App. 2004) ("We review evidentiary rulings for an abuse of discretion and generally affirm a trial court's admission or exclusion of evidence absent a clear abuse or legal error and *resulting prejudice*.") (emphasis added); Ariz. R. Fam. Law P. 86 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Other than making the conclusory assertion that the court's decision to exclude an exhibit had "a negative impact on the ruling," Husband does not explain how the court's evidentiary rulings prejudiced his case. Accordingly, we see no basis to disturb the court's orders.

## ATTORNEY'S FEES AND COSTS

**¶38** Both Husband and Wife request attorney's fees and costs on appeal. Because Husband failed to specify a statutory basis for such an award, we deny his request. ARCAP 21(a)(2); *Chopin v. Chopin*, 224 Ariz. 425, 432, ¶ 24 (App. 2010). Wife requests an award of attorney's fees and costs under A.R.S. § 25-324. In the exercise of our discretion, we decline to award Wife her attorney's fees but award her costs incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶39 We affirm the superior court's decree.



AMY M. WOOD • Clerk of the Court
FILED: AA