162 P.3d 665

Pamela M. HANSON, as Personal Representative of the Estate of Amy S. Hanson, deceased, Plaintiff–Counterdefendant/Appellant,

v.

TEMPE LIFE CARE VILLAGE, INC., an Arizona corporation, Defendant–Counterclaimant/Appellee.

No. 1 CA–CV 06–0274.

Court of Appeals of Arizona, Division 1, Department C.

July 12, 2007.

Wright & Associates by Lawrence C. Wright, Ryan P. Dyches, Mesa, Attorneys for Plaintiff–Counterdefendant/Appellant.

Gust Rosenfeld, P.L.C. by Charles W. Wirken, Phoenix, Attorneys for Defendant–Counterclaimant/Appellee.

## OPINION

IRVINE, Judge.

¶ 1 Pamela Hanson, as personal representative of the estate of Amy Hanson ("Estate"), appeals from the grant of summary judgment to Tempe Life Care Village ("Village"). We conclude that the terms of the agreement between Amy Hanson and the Village allowed her to receive a full refund of the entrance fee by giving written notice and vacating her unit within twelve months of taking occupancy. Therefore, we reverse and remand to the trial court to enter judgment for the Estate.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This case arises out of a life care contract between the Village and Amy Hanson ("Decedent"). The Village, a not-for-profit corporation, operates Friendship Village of Tempe, a residential retirement community and care facility in Tempe, Arizona.

¶ 3 Under the Standard Friendship Village Residency Agreement ("Standard Agreement"), Decedent was entitled to reside at the Village for the rest of her life in exchange for a $144,400 entrance fee and fees of $1,760 per month. The parties executed the Standard Agreement and the Addendum to Residency Agreement ("Addendum") (collectively, "Contract") on September 24, 2002, and Decedent paid the entrance fee in full prior to moving in on December 18, 2002. Both the Standard Agreement and Addendum impose conditions on the refund of a Village resident's entrance fee.

¶ 4 Decedent was seventy-eight years old at the time her residence began. Her doctor did not report any terminal illnesses at the time she applied to reside at the Village. During the ensuing year, she was diagnosed with acute leukemia. On November 28, 2003, Decedent gave written notice, specifically referring to the refund terms of the Addendum, of her intent to terminate the Contract and vacate her living unit within her first twelve months of occupancy. Accordingly, Decedent moved out on December 17, 2003, and did not pay any monthly fee beyond the one for December 2003. She died of "progressive acute myeloid leukemia" on February 15, 2004.

¶ 5 The Village subsequently informed the Estate that it was not entitled to a refund of Decedent's entrance fee. The Estate instituted a breach of contract suit on January 12, 2005, and the Village responded with an answer and counterclaim for $2,366.93 in outstanding fees and monthly charges. Consequently, the parties filed cross-motions for summary judgment. The trial court granted the Village's motion without elaboration or oral argument and awarded costs and attorneys' fees under Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003). This appeal followed. We exercise jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and –2101 (2003).

## DISCUSSION

¶ 6 This court reviews a summary judgment ruling de novo, viewing the record in the light most favorable to the non-moving party. *Salib v. City of Mesa*, 212 Ariz. 446, 450, ¶ 4, 133 P.3d 756, 760 (App.2006). Summary judgment is warranted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c). When cross-motions for summary judgment are at issue in an appeal, we can enter summary judgment as a matter of law for the losing party if we find that the trial court erroneously entered summary judgment against that party. *Havasu Springs Resort Co. v. La Paz County*, 199 Ariz. 349, 350, ¶ 2, 18 P.3d 143, 144 (App.2001).

¶ 7 The construction of a contract—including whether its terms are ambiguous or uncertain—is a question of law subject to de novo review. *See Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 62, ¶ 51, 985 P.2d 535, 547 (App.1998). We interpret contracts to give effect to all their parts. *Kintner v. Wolfe*, 102 Ariz. 164, 168, 426 P.2d 798, 802 (1967) (refusing to adopt an interpretation rendering one section a nullity). "When interpreting a contract . . . it is fundamental

that a court attempt to 'ascertain and give effect to the intention of the parties at the time the contract was made if at all possible.'" *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993) (quoting *Polk v. Koerner,* 111 Ariz. 493, 495, 533 P.2d 660, 662 (1975)).

¶ 8 Section X of the Standard Agreement governs the termination of the Contract by a resident:

Resident may terminate this Agreement upon conditions set forth in either subparagraph (a) or (b) as follows:

(a) If Resident *has not* paid the entrance fee in full, . . . .

(b) If Resident *has* paid the entrance fee in full, Resident shall:

(i) Provide Village with a written statement from the Medical Director that Resident is not then suffering from a terminal illness; and:

(ii) Contemporaneously with the written statement in Subparagraph (b)(i) above, give Village written notice of termination effective 120 days after the date of such notice; and:

(iii) Pay the monthly fee through the effective date of termination.

In the event of the death of Resident, subparagraphs (b)(i) and (b)(ii) shall not apply and the effective date of termination shall be thirty (30) days after the date of death.

(c) If Resident terminates this Agreement pursuant to either Subparagraph (a) or (b) above, Resident shall be entitled to reimbursement as provided in Paragraph XII hereof.

(Emphasis in original.)

¶ 9 Section XII of the Standard Agreement, governing reimbursement of the entrance fee, provides:

Resident shall *not* be entitled to reimbursement of the entrance fee except as follows:

. . . .

(c) If, after payment of the entrance fee in full, this Agreement is terminated in compliance with Paragraph X by Resident's death, the entrance fee shall be considered fully earned by the Village and no refund of the entrance fee, or any portion thereof, shall be made, and the Resident's successor and/or assigns shall have no interest therein under this Agreement.

(d) If, after payment of the entrance fee in full, this Agreement is terminated in compliance with Paragraph X for any reason other than death, Village will attempt to obtain a new resident for the Living Unit.

If, in the sole discretion of Village, repayment to the Resident will not jeopardize the sound financial structure of Village, then upon receipt of an entrance fee from a new resident, and to the extent that the entrance fee from the new resident is sufficient for such purpose, Resident will be reimbursed for the amount of the entrance fee previously paid by Resident, less an appropriate charge for the period of his or her residency and the period until the new resident assumes residency. In any event, Village will retain one percent (1%) of the entrance fee per month of residency or twenty-two (22%) of the entrance fee, whichever is greater. In addition, Village will retain a sum equal to the amount of medical expenses (including any discounted Health Center service) incurred by Village for Resident's care during the term of his or her residency, the amount of any monthly fees or other sums owed by Resident to Village under this Agreement, and the amount of any monthly fees deferred by Village on behalf of Resident under Paragraph VIII(b) hereof.

(Emphasis in original.)

¶ 10 The Village argues that Decedent attempted to comply with Section X(b) by terminating the Standard Agreement with written notice and supplying proof that she had no terminal condition.[1] Applying only the Standard Agreement, this termination would

---

1. Decedent only referred to the Addendum in her notice of termination. Decedent also provided the Village written notice of termination on November 28, 2003, and subsequently provided them with two letters indicating she was not terminally ill. The parties do not dispute that the Decedent was not suffering from a terminal illness when she submitted her notice of termination.

have taken effect 120 days after the written notice of November 28, 2003. As the Village interprets the Contract, Decedent's death on February 15, 2004, caused the termination to take effect thirty days thereafter, on March 16, 2004. The Village contends that because Decedent's death terminated the Contract, not Decedent's notice, Section XII(c) precludes a refund of the entrance fee to the Estate.

¶ 11 The Estate responds that the Addendum required the Village to refund the entrance fee. The Addendum states:

> Not withstanding [sic] any other provisions of the attached Residency Agreement ... to the contrary, in the event that Resident shall for any reason choose to terminate this Residency Agreement within twelve (12) months after taking occupancy of the living unit and gives written notice to the Village and vacates the assigned living unit ... within that time, then rather than the amount of the refund being calculated as set forth in Section XII d, Resident shall be entitled to a 100% refund of the entrance fee previously paid, reduced only by ... any monthly fees or other sums owed by Resident to the Village under this Agreement. All other provisions of the Agreement, including Section X b and Section XII c, not inconsistent with this addendum, shall apply to such refund.
>
> THE 100% REFUND PROVIDED BY THIS ADDENDUM DOES NOT APPLY TO A TERMINATION OF THE RESIDENCY AGREEMENT BY REASON OF DEATH.

(Emphasis in original.)

¶ 12 According to the Estate, Decedent met the conditions in the Addendum by giving written notice of termination and vacating her unit within the first twelve months of occupancy. The Estate argues that the portion of the Addendum incorporating Section X(b)(ii), delaying the termination's effect for 120 days, is inconsistent with the plain language of the Addendum.

¶ 13 The Village responds that the Addendum made only one change to the Standard Agreement, namely that when effective notice of termination is given within the first year of residence the resident receives a 100 percent refund, in lieu of a discretionary and possibly partial refund under Section XII(d) of the Standard Agreement, assuming that no monthly fees are outstanding. In essence, it argues that the Addendum and the Standard Agreement are consistent and work together, and a notice of termination under the Addendum is only effective after 120 days.

¶ 14 The Village's interpretation ignores the fact that the Addendum allows both the written notice and vacating the unit to occur within twelve months of occupancy. If these two actions are accomplished, the result is the resident has chosen to "terminate" the Agreement "within twelve (12) months after taking occupancy." The Village's interpretation would not permit a resident to terminate the Agreement within the first twelve months if notice was given after the eighth month, because the notice would not be effective for 120 days. Given the plain language of the Addendum that a resident may choose to terminate the Agreement within the first twelve months of occupancy, we find an interpretation that requires that choice be made within the first eight months to be untenable. To the extent Section X(b) of the Standard Agreement requires a written notice of termination be effective only 120 days after the date of the notice, we find the requirement to be inconsistent with the Addendum.

¶ 15 Therefore, we find that the terms of the Addendum allowing for a complete refund of the entrance fee became effective after Decedent complied with the two requirements—written notice of termination and vacating the residential unit within the first twelve months of occupancy. Similarly, the Village was not entitled to recover monthly fees and charges assessed against the Decedent after she vacated the facility. The Agreement was terminated when she vacated, and she was not liable for charges after the date of termination.

¶ 16 Our decision on the merits also resolves the Estate's appeal of the award of attorneys' fees. The Village is no longer the

prevailing party, so it was not entitled to recover its fees in the trial court.

## CONCLUSION[2]

¶ 17 We reverse the grant of summary judgment and remand to the trial court with directions to enter judgment in favor of the Estate. In addition, we award the Estate its reasonable attorneys' fees incurred on appeal pursuant to A.R.S. § 12–341.01, subject to its compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: MAURICE PORTLEY, Presiding Judge and DONN KESSLER, Judge.

---

**2.** We need not address the evidentiary issues raised on appeal as our contract analysis is dis-    positive.