199 P.3d 623

MALAD, INC., an Arizona corporation,
Plaintiff/Appellant,

v.

Robert C. MILLER and Janice Miller, husband and wife, Defendants/Appellees.

No. 1 CA–CV 07–0680.

Court of Appeals of Arizona,
Division 1, Department C.

July 3, 2008.

Review Denied Dec. 4, 2008.

■■■

Lake & Cobb, P.L.C. By Joel E. Sannes, R. Kris Bailey, Joseph J. Glenn, Tempe, Attorneys for Plaintiff/Appellant.

Thomas, Thomas & Markson, P.C. By Neal B. Thomas, Michael G. Kelley, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

IRVINE, Presiding Judge.

¶ 1 This case involves the rule against perpetuities and its application to a commercial real estate sales agreement. For the following reasons, we find that the rule against perpetuities does not render void a commercial real estate sales agreement that fails to include a specific time period for performance if it is reasonable to conclude that the parties intended performance within a reasonable time period. Therefore, we reverse and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On November 16, 2001, Malad, Inc. ("Malad") as the buyer and Maxus Management, Inc. ("Maxus") as the seller entered a sales agreement for real property. Pursuant to the agreement, Malad would purchase from Maxus approximately 1618 acres for $2000 per acre for a total purchase price of $3,236,000 by February 15, 2002 "or such other time as Seller and Buyer mutually agree in writing." Malad deposited $1000 in earnest money upon the opening of escrow and deposited an additional $4000 pursuant to the sales agreement. The sales agreement provided that "[i]f Seller defaults, Buyer shall retain the earnest deposit money and liquidated damages."

¶ 3 In February 2002, the parties mutually agreed in writing to extend the date for closing escrow to April 15, 2002. On March 29, 2002, they again mutually agreed in writing to extend the date for closing escrow. The new agreement stated, "[t]he close of escrow shall be extended to May 15, 2002 or upon delivery of clear title and verification of water rights by the sellers whichever occurs later."

¶ 4 On May 15, 2002, Malad sent a letter to the escrow agent requesting cancellation of the escrow because Maxus was unable to provide clear title and close escrow. Malad's letter also requested return of its $5000 earnest money deposit. On May 21, 2002, after talking to Robert C. Miller ("Miller"), acting as Maxus's real estate agent, Malad faxed a note to the title company withdrawing its prior request to cancel escrow. In July 2002, Miller contacted the escrow agent and requested that escrow close because all conditions of the agreement were satisfied. Maxus, however, did not have clear title to 280 acres of the land at that time.

¶ 5 Subsequently, on September 16, 2002, Miller contacted Malad about amending the transaction to deal with the 280 acres lacking clear title. Miller's correspondence to Malad suggested two options:

1. Cancellation of this contract with full return of the $5,000. Earnest deposit to Malad Inc.

2. Immediately closing the transaction with the exclusion of the 280 effected [sic] acres with the full understanding that escrow on those remaining parcels will take place within 15 days of the resolution of the title issues.

In a letter from Malad's president to Miller, Malad rejected both of Miller's options and proposed its own two options, with the second option being referral of the matter to legal counsel. Malad's letter also stated, "[p]lease inform you [ sic] clients that I am not willing to cancel this contract and receive a refund of earnest deposit."

¶ 6 Maxus did not respond to Malad's counter proposals and instead in late September 2002, officers of Maxus signed Malad's May 15, 2002 cancellation letter in an attempt to cancel escrow. In October 2002, the title company cancelled the Malad–Maxus escrow and returned the $5000 earnest money deposit to Malad. At that time, Malad's attorney wrote letters to Maxus's attorney alleging that Maxus had breached the sales

agreement by improperly terminating the escrow. Malad's attorney argued that Malad had suffered damages and threatened litigation over the alleged breach.

¶ 7 In September 2005, Malad filed its complaint against Maxus alleging breach of contract. During discovery, Malad learned that Maxus had sold the property to another buyer in June 2003 at the same per-acre price it had agreed to sell to Malad. After learning the details of this sale, Malad amended its complaint and added Miller and his wife (collectively "the Millers") as defendants alleging that Miller intentionally interfered with the sales agreement by causing Maxus to breach the contract and sell the property to another buyer. Malad's amended complaint also alleged other causes of action against Maxus and other named defendants.[1]

¶ 8 The Millers filed a motion for summary judgment arguing that Malad's claim against them for intentional interference with the sales agreement was barred by the statute of limitations, that Miller's advice to Maxus did not constitute interference with the contract, and, alternatively, that Malad's damages were limited to the return of the earnest money as stated in the contract. Before the trial court issued a ruling, however, someone raised the issue of the rule against perpetuities. Although not entirely clear from the record how the issue was raised, both parties filed pleadings in the trial court addressing the rule against perpetuities.

¶ 9 At oral argument on the Millers' motion for summary judgment, the trial court denied the motion regarding the interference with a contract claim and the limitation of damages defense. It took the statute of limitations issue under advisement. Subsequently, however, the trial court found that the sales agreement was void because it violated the rule against perpetuities. Therefore, it found, as a matter of law, that Miller could not be liable for interfering with a void contract and granted the Millers' motion for summary judgment on that issue only. The remaining issues under advisement were rendered moot by this ruling.

¶ 10 Malad filed a motion for reconsideration, which the trial court denied. Malad timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) and –2101(B) (2003).

## DISCUSSION

¶ 11 We review a trial court's summary judgment de novo. *Schwab v. Ames Constr.*, 207 Ariz. 56, 60, ¶ 17, 83 P.3d 56, 60 (App. 2004). A trial court properly grants a motion for summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz.R.Civ.P 56(c)(1). Furthermore, a trial court should grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Link v. Pima County*, 193 Ariz. 336, 340, ¶ 12, 972 P.2d 669, 673 (App.1998) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990)). We must draw all inferences and view all evidence in a light most favorable to the non-moving party. *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, ¶ 7, 953 P.2d 168, 170 (1998).

### A. The Rule Against Perpetuities

¶ 12 Malad contends that the trial court erred by ruling that the rule against perpetuities voids the entire sales agreement and entitled the Millers to summary judgment as a matter of law. Because we reverse the judgment for the Millers based on this issue, we need not address the other issues raised by Malad. Based on our interpretation of *Byke Construction Co. v. Miller*, 140 Ariz. 57, 58–60, 680 P.2d 193, 194–96 (App.1984), we find that a genuine issue of material fact exists as to what reasonable time period for performance applied to the March 29, 2002 amendment to the sales agreement. We also find that the trial court erred as a matter of law in its application of the rule against perpetuities.

---

1. Malad settled with Maxus and the other named defendants, except the Millers, in June 2007.

¶ 13 In *Byke*, this Court held that an option to repurchase real property that did not specify a time period to exercise the option did not violate Arizona's rule against perpetuities. *Id.* at 59, 680 P.2d at 195. The Seller, Byke Construction, sold real property to the Buyers. *Id.* at 58, 680 P.2d at 194. The escrow instructions included an option allowing Byke to repurchase the property. The exact language was:

> Buyer agrees to begin house construction on the subject property on or before May 1, 1979. Should Buyer fail to begin construction on or before such date, Seller shall have the right to buy back the subject property at a purchase price equal to the net proceeds paid Seller at close of this escrow.

*Id.* The Buyers did not begin construction by May 1, 1979. *Id.* Almost two years later Byke wanted to repurchase the property pursuant to the option. *Id.* The Buyers refused to reconvey the property, arguing the option provision was void under the rule against perpetuities. *Id.*

¶ 14 The trial court granted summary judgment in favor of the Buyers, finding that the option provision was void because it violated the rule against perpetuities. *Id.* Byke appealed and argued that "because no time period is specified, [the court] must assume the parties intended a reasonable time period to apply, and that a reasonable time period is less than twenty-one years." *Id.* at 58–59, 680 P.2d at 194–95. We agreed. *Id.* at 59, 680 P.2d at 195.

¶ 15 Our analysis in *Byke* began by reciting the common law rule against perpetuities and identifying the rule's original intent "to prevent an estate owner from unduly restricting the alienation of property." *Id.* ("The rule [against perpetuities] states: No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."). We then declined to agree with the broad holding in a California Supreme Court case that the rule against perpetuities does not apply to commercial transactions. *Id.; see Wong v. DiGrazia*, 60 Cal.2d 525, 35 Cal. Rptr. 241, 386 P.2d 817, 823 (1963). Nevertheless, we agreed with the California Su-

preme Court's conclusion that the rule against perpetuities is inapplicable to an agreement creating an interest that cannot reasonably be interpreted to vest later than twenty-one years in the future. *Byke*, 140 Ariz. at 60, 680 P.2d at 196 (citing *Wong*, 35 Cal.Rptr. 241, 386 P.2d at 823). Therefore, we determined that "when current rules of statutory construction exist which would validate a transaction otherwise void by the operation of the rule against perpetuities, they should be applied." *Id.* at 59, 680 P.2d at 195.

¶ 16 *Byke* found that the language of A.R.S. § 33–261, the Arizona statute codifying the common law rule against perpetuities, is broad enough to include options contracts. *Id.* We found, however, that "[w]ith regard to options contracts, courts generally hold that a reasonable time period will be judicially implied where none is specified in the agreement." *Id.; see Zancanaro v. Cross*, 85 Ariz. 394, 339 P.2d 746 (1959). Furthermore, the rule in Arizona is to interpret a contract to uphold it and give effect to the parties' intentions whenever reasonable and possible. *Byke*, 140 Ariz. at 59, 680 P.2d at 195 (citing *Shattuck v. Precision–Toyota, Inc.*, 115 Ariz. 586, 566 P.2d 1332 (1977)). Consequently, we found as a matter of law that the parties could not have intended to leave the option to repurchase open for a period longer than twenty-one years plus a life in being at the time the option was created. *Id.* at 59–60, 680 P.2d at 195–96. We remanded the dispute for a factual determination of whether Byke exercised the option within a reasonable time period. *Id.*

¶ 17 We find the same analysis applies here. "It is a long-standing policy of the law to interpret a contract whenever reasonable and possible in such a way as to uphold the contract." *Shattuck*, 115 Ariz. at 589, 566 P.2d at 1335. We apply a standard of reasonableness to contract language and we consider the surrounding circumstances of the agreement. *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 120, ¶ 12, 75 P.3d 1075, 1078 (App.2003).

¶ 18 Here, the amendment to the sales agreement stated in part: "The close of escrow shall be extended to May 15, 2002 or

upon delivery of clear title and verification of water rights by the sellers whichever occurs later." We consider the first portion of the amendment as clearly stating "[t]he close of escrow shall be extended to May 15, 2002." By specifying the date of May 15, 2002, the parties clearly intended to extend the close of escrow to at least that date.

¶ 19 Beyond May 15, 2002, we must consider the second portion of the extension language, which states: "or upon delivery of clear title and verification of water rights by the sellers whichever occurs later." This language defines the acts of the seller that will trigger the obligation to close escrow, but does not set a specific time limit for those actions to occur.

 ¶ 20 We conclude that it is not reasonable to presume that Malad would obtain equitable interest in title to the property after twenty-one years have passed, much less after the passage of a life in being plus twenty-one years. We also find that it is not reasonable to infer that the parties intended the March 29 amendment to continue for an indeterminate amount of time. The record shows Malad's owner testified that he believed the language allowed an open-ended closing date, but we conclude that Malad's subjective intent after entering the sales agreement and written amendment is not relevant to contract interpretation. We interpret a contract based on the parties' intent upon entering the agreement, not their intent after the fact. *See Hanson v. Tempe Life Care Village, Inc.,* 216 Ariz. 26, 27–28, ¶ 7, 162 P.3d 665, 666–67 (App.2007). Moreover, Malad's attempted cancellation of escrow on May 15, 2002, is inconsistent with its owner's later testimony that he intended escrow to remain open indefinitely.

¶ 21 The Millers argue that we should not read a reasonableness requirement into the contract, citing *Dorado Ltd. Partnership v. Broadneck Development Corp.,* 317 Md. 148, 562 A.2d 757 (1989). Dorado held that no reasonableness requirement would be read into that particular contract because performance was conditional on the actions of a third party rather than one of the two parties to the contract, so the rule against perpetuities applied to void the contract. *Id.* at 761–

62. Arizona courts have not adopted that interpretation of the rule against perpetuities. Even if we had, *Dorado's* rationale would not apply to this case. Maryland cases following *Dorado* have strictly applied its holding to the specific facts at issue in *Dorado.* The rule against perpetuities has not been extended to conditions that are generally within the control of one of the parties even if a third party may be involved. Conditions that have not triggered the rule against perpetuities have included receipt of clear title, completion of water percolation tests, issuance of building permits, and a sellout of subdivision lots. *Kobrine L.L.C. v. Metzger,* 151 Md.App. 260, 824 A.2d 1031, 1046 (2003) (sale of all lots in subdivision), *vacated on other grounds by Kobrine L.L.C. v. Metzger,* 380 Md. 620, 846 A.2d 403 (2004); *Brown v. Parran,* 120 Md.App. 653, 708 A.2d 12, 15–16 (1998) (water percolation tests and building permits); *Hays v. Coe,* 88 Md.App. 491, 595 A.2d 484, 490 (1991) (good and marketable title), *vacated on other grounds by Coe v. Hays,* 328 Md. 350, 614 A.2d 576 (1992) (finding appellate court's rule against perpetuities ruling correct); *Stewart v. Tuli,* 82 Md.App. 726, 573 A.2d 109, 112–13 (1990) (clear title).

¶ 22 The contract here is not conditioned on the actions of a third party, but instead on the actions of the two contracting parties— Malad and Maxus. There is nothing in the record to indicate that "delivery of clear title and verification of water rights by the sellers" were not within the control of the parties. Consequently, we interpret the sales agreement to include an implied condition that the parties fulfill their obligations within a reasonable time.

 ¶ 23 Based on the March 29 amendment, we conclude that Malad and Maxus intended to extend the close of escrow to at least May 15, 2002 and that after that date they intended to close escrow at a date less than twenty-one years in the future. We find that an issue of fact exists as to the reasonable time within which the sales agreement could be enforced by one or both parties. Therefore, we reverse the trial court's grant of summary judgment and remand for further proceedings.

**B. The Millers' Cross–Issues, Motion to Strike, and Request for Attorneys' Fees on Appeal**

¶ 24 The Millers raise two cross-issues on appeal. First, they argue that Malad added them as defendants after the statute of limitations expired. Second, the Millers argue that they are entitled to summary judgment because Miller cannot be liable as a fiduciary for giving honest advice to his principal. The trial court declined to rule for the Millers on either ground. After receiving the judgment on the rule against perpetuities, the Millers filed a motion requesting a ruling on their statute of limitations argument. The trial court found "if the Contract at issue was not void as violative ... of the Rule Against Perpetuities, issues of fact ... would have precluded the entry of summary judgment in Miller's favor on statute of limitations grounds." Additionally, before finding that the rule against perpetuities voided the sales agreement, the trial court denied the Millers' motion for summary judgment on Malad's intentional interference claim, finding that the Millers were not entitled to summary judgment as a matter of law. Because the trial court did not fully address the cross-issues, we decline to address them on appeal. The issues can be fully addressed on remand.

¶ 25 The Millers have also moved to strike Malad's citations to A.R.S. §§ 14–2901 through –2907 (2005), the Uniform Statutory Rule Against Perpetuities ("USRAP"), which were included in Malad's reply brief. Malad acknowledges these statutes were not cited in the trial court or in its opening brief. It argues, however, that we should consider the statutes because they resolve the legal issue before us.

¶ 26 We generally will not rely on arguments raised for the first time in an appellant's reply brief. *In re Marriage of Pownall,* 197 Ariz. 577, 583 n. 5, ¶ 25, 5 P.3d 911, 917 n. 5 (App.2000). Malad asserts it is not raising a new issue but merely citing previously uncited authority to support its argument that the rule against perpetuities does not apply. The Millers disagree and also argue that the USRAP does not apply to the sales agreement here.

¶ 27 The line between a new issue on appeal and a new citation to authority is sometimes difficult to draw, and in this case we need not do so. We agree with the Millers that the USRAP does not apply here. Arizona Revised Statutes § 14–2904 specifies that Arizona's version of the USRAP does not apply to a "nondonative transfer," except in certain enumerated circumstances, none of which apply here. The contract between Maxus and Malad did not involve a donative transfer, so the USRAP does not apply. The controlling law here is the common law rule against perpetuities codified in A.R.S. § 33–261 (2007).[2] Having addressed this issue, we deny the motion to strike Malad's citation of the USRAP, but hold the USRAP does not modify the application of the rule against perpetuities to transactions beyond the scope of the USRAP.[3]

¶ 28 Finally, the Millers request attorneys' fees on appeal pursuant to Arizona Rule of Civil Appellate Procedure 21(c). They fail to state a legal basis for the fee request. AR-CAP 21(c); *see Bank One, Ariz., N.A. v. Beauvais,* 188 Ariz. 245, 251–52, 934 P.2d 809, 815–16 (App.1997). Rule 21(c) only provides the procedure for requesting attorneys' fees on appeal; it does not provide a legal basis for such an award. *See Bed Mart, Inc. v. Kelley,* 202 Ariz. 370, 375, ¶ 24, 45 P.3d 1219, 1224 (App.2002). Moreover, the Millers are not the prevailing parties on appeal. We therefore deny the Millers' request for attorneys' fees on appeal.

**CONCLUSION**

¶ 29 For the foregoing reasons, we reverse the trial court's summary judgment in favor of the Millers and remand the case for fur-

---

2. We cite the current version of A.R.S. § 33–261 because no revisions material to this opinion have occurred.

3. Although we find the USRAP does not apply to this particular case, we believe any informed analysis of the rule against perpetuities as it currently exists should include citations to both the USRAP and A.R.S. § 33–261. Malad's failure to cite the USRAP in the trial court meant the trial court was not fully informed of the legal background of the issue before it.

ther proceedings consistent with this opinion. We deny Millers' motion to strike portions of the reply brief and Exhibit 1 to the reply brief.

CONCURRING: MICHAEL J. BROWN and SUSAN A. EHRLICH, Judges.

