NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOAN W. BRUBACHER, *Plaintiff/Appellee,*

*v.*

PROPAGANDA COMMUNICATIONS, INC., an Arizona corporation;
JPM III, LLC, an Arizona limited liability company; RESOLUTE
COMMERCIAL SERVICES, LLC, an Arizona limited liability company;
JEREMIAH FOSTER and LISA FOSTER; and JOHN P. MITCHELL III and
JENNIFER MITCHELL, *Defendants/Appellants.*

No. 1 CA-CV 15-0682
FILED 4-4-2017

Appeal from the Superior Court in Maricopa County
No. CV2014-008042
The Honorable Katherine M. Cooper, Judge

**AFFIRMED IN PART, VACATED IN PART AND MODIFIED IN PART**

COUNSEL

Quarles & Brady LLP, Phoenix
By Isaac M. Gabriel, William Scott Jenkins Jr., Andrea H. Landeen
*Counsel for Defendants/Appellants*

Jennings, Haug & Cunningham, L.L.P., Phoenix
By Blake E. Whiteman, Robert J. Lamb
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Chief Judge Michael J. Brown and Judge Maurice Portley joined.[1]

---

**T H U M M A**, Judge:

¶1          Defendants Propaganda Communications, Inc.; JPM III, LLC; Resolute Commercial Services, LLC; Jeremiah and Lisa Foster and John and Jennifer Mitchell (collectively Appellants) appeal from a final judgment, entered after a bench trial, in favor of plaintiff Joan Brubacher (Appellee) for breach of contract, conversion, accounting, constructive trust and an award of attorneys' fees and against Appellants on their fiduciary duty counterclaim. For the reasons that follow, that portion of the judgment for Appellee on her conversion claim is vacated, that portion of the judgment imposing a constructive trust is vacated as moot and that portion of the judgment awarding attorneys' fees to Appellee is modified so that the award is against defendants JPM and Propaganda only. The remainder of the judgment is affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2          Jeremiah Foster is the principal and sole member of Propaganda, and John Mitchell is the principal and sole member of JPM.[3] Propaganda and JPM are the founding members of Resolute, which was formed in 2009. After working as a consultant for Resolute for about two years, in 2011, Brubacher became a Member of Resolute (with corresponding management rights) and acquired a one-third ownership

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] On appeal, this court views the evidence in the light most favorable to upholding the superior court's decision following a bench trial. *Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, 506 ¶ 9 (App. 2005).

[3] Lisa Foster and Jennifer Mitchell were joined solely for community property purposes.

Interest in Resolute. As of June 15, 2011, Appellee, Propaganda and JPM all agreed to a 32-page Operating Agreement for Resolute (Agreement).

¶3 The Agreement defined Appellee's rights as a Member and rights associated with her ownership Interest. The Agreement provides "[t]he Members shall direct, manage and control the business" of Resolute. Under the Agreement, an Interest "shall mean the economic rights of a Member . . . to share in distributions of cash and other property from [Resolute] . . . together with its allocable share of [Resolute's] Profits or Losses and net income or loss for federal and state income taxes."

¶4 In the summer of 2013, Appellee announced she was voluntarily withdrawing as a Member. This action constituted an "Event of Withdrawal" under the Agreement. *Accord* Ariz. Rev. Stat. (A.R.S.) §§ 29-733, -734 (2017).[4] Two Articles in the Agreement discuss the rights of withdrawing and remaining Members[5] following an Event of Withdrawal. Article 8 ("Admissions and Withdrawals") sets forth the rights of a withdrawing Member regardless of the reason for withdrawal (including that the withdrawing Member "shall not have or enjoy any right to participate in the management of" Resolute). Article 9 ("Transfers") governs the possible acquisition of the Interest owned by the voluntarily withdrawing Member by the remaining Members. Given Appellee's voluntary withdrawal, under Article 9, the remaining Members had "the right or option to purchase" her Interest. Article 9 contains a detailed process for the remaining Members to exercise such an option to purchase, including how to determine the purchase price and method of payment for the Interest and various related timelines.

¶5 From July 2013 through March 2014, the parties unsuccessfully negotiated a buyout for JPM and Propaganda to acquire Appellee's Interest. The parties did not, however, invoke the process contained in Article 9.

¶6 Appellee continued to perform work for Resolute through mid-September 2013. She and the other two Members each received their

---

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[5] As a result of her withdrawal, Appellee also was deemed a "Violating Member" under the Agreement. Consistent with the parties' briefs, and for ease of reference, this decision refers to Appellee as the withdrawing Member and Propaganda and JPM as the remaining Members.

one-third share of distributions from Resolute (designated "Partner Earnings") approximately monthly through September 20, 2013, with Appellee's share totaling $60,000. After September 20, 2013, as relevant here, Appellee received no additional distributions while the other two Members received a total of $1,698,750 in additional distributions from Resolute. By March 2014, Appellee objected, claiming she was entitled to a one-third share of distributions until such time as her Interest was acquired by the remaining Members.

¶7 By early April 2014, negotiations had broken down and Mitchell told Appellee "now I guess we'll follow the terms of the [A]greement." Appellee testified that she then waited two weeks to hear more and, having heard nothing, her attorney sent a demand letter to Mitchell and Foster. After receiving no response, Appellee filed this case in mid-May 2015. As amended, her complaint asserted breach of contract, conversion and breach of fiduciary duty claims and sought an accounting and a constructive trust. Appellants pressed counterclaims for declaratory judgment, breach of fiduciary duty and breach of contract.

¶8 After disclosure, discovery and substantial motion, the superior court held a three-day bench trial. After taking the matter under advisement, in an eight-page minute entry containing findings of fact and conclusions of law, the court found for Appellee on her claims for breach of contract, conversion and an accounting, and imposed a constructive trust, but found for Appellants on Appellee's fiduciary duty claim. In doing so, the court rejected Appellants' estoppel defenses. The court also found for Appellee on Appellants' counterclaims. Finding that Appellants had not yet acquired Appellee's Interest, the court valued that Interest at $60,000 "pursuant to Section 9.3 of the" Agreement and found Appellee was entitled to a one-third share of distributions that Resolute had paid since September 20, 2013.

¶9 Following additional motion practice, including an unsuccessful motion to amend findings/for new trial by Appellants, a final judgment awarded Appellee $60,000 for her Interest; $566,250 in distributions (one-third of the $1,698,750 distributed to the remaining Members); $67,508 in attorneys' fees pursuant to A.R.S. § 12-341.01 and $3,400.40 in taxable costs, all plus interest until paid. This court has jurisdiction over Appellants' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶10　　　　Appellants argue the superior court erred by (1) finding for Appellee on her breach of contract claim regarding distributions, meaning Appellants (not Appellee) are the prevailing parties; (2) rejecting Appellants' estoppel defenses; (3) finding for Appellee on her conversion claim; (4) imposing a constructive trust; (5) finding Appellee did not owe Appellants a fiduciary duty and (6) denying Appellants' motion for new trial.[6] This court reviews issues of contract interpretation de novo, *see ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290 ¶ 15 (App. 2010), but reviews factual findings for an abuse of discretion, *see Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 478 ¶ 22 (App. 2015).

**I.　　The Court Did Not Err In Finding For Appellee On Her Breach Of Contract Claim.**

¶11　　　　Although contract interpretation is a question of law that this court reviews de novo, *Callaway*, 226 Ariz. at 290 ¶ 15, whether a party has breached a contract is a factual matter, *see Keg Restaurants Arizona, Inc. v. Jones*, 240 Ariz. 64 ¶ 45 (App. 2016).

**A.　　The Superior Court Properly Rejected Appellants' Argument That Appellee Breached The Agreement By Rejecting Appellants' Buyout Offer.**

¶12　　　　Appellants argue that because the court found Appellee's Interest was worth $60,000, but they had offered her more than that amount during negotiations, she breached the Agreement. Not so. The Agreement contains no provision requiring a withdrawing Member to accept an offer from the remaining Members during negotiations, even if that offer is higher than the ultimate value determined pursuant to the formal provisions of the Agreement or in resulting litigation.

---

[6] Appellants do not challenge that portion of the judgment awarding Appellee $60,000 for her Interest. Indeed, at oral argument before this court, counsel agreed that, soon after entry of the judgment, Appellants paid Appellee the $60,000 set by the court as the value for that Interest and that, as a result, Appellee's Interest transferred to the remaining Members. Accordingly, the value of Appellee's Interest and the transfer of that Interest to the remaining Members is not at issue in this appeal.

¶13        As support for their argument, Appellants rely on *United California Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238 (App. 1983), which they assert "is controlling precedent and is directly on point." Appellants' reliance on *Prudential* is misplaced. *Prudential* does not stand for the proposition that, in attempting to agree on an unspecified sum, a party breaches a contract by requesting an amount more than the other parties think is reasonable. Instead, *Prudential* held that a repudiation of a contract may occur if "one party clearly insists upon a performance to which he is not entitled." 140 Ariz. at 279. Appellants have not shown, and the court did not find, that Appellee insisted on such performance, repudiated the Agreement or, for that matter, did not negotiated in good faith. *See id.* ("a mere disagreement over the terms of a contract is not itself an anticipatory repudiation, nor is a mere offer to perform on terms other than those contained in the agreement, at least if the offer is made in good faith"). That Appellants and Appellee could not negotiate an agreeable price does not mean that Appellee breached the Agreement.

¶14        Appellants argue Appellee anticipatorily breached the Agreement because she "ignored the Agreement's valuation procedures." The record, however, reveals that neither Appellants nor Appellee invoked the "valuation procedures" in the Agreement for the transfer of her Interest for many months after she announced her departure. This conduct, undertaken before the dispute arose, allowed the superior court to properly conclude Appellee did not commit an anticipatory breach of the Agreement. *See Ancell v. Union Station Associates, Inc.*, 166 Ariz. 457, 460 (App. 1990) ("'Conduct can manifest acceptance of an offer or acquiescence in a modification.'") (citation omitted); *see also Prudential*, 140 Ariz. at 266 ("The acts of the parties themselves, before disputes arise, are the best evidence of the meaning of doubtful contractual terms.").

### B.    The Superior Court Properly Concluded Appellee Had A Right To Distributions Until Her Interest Was Acquired.

¶15        Appellants argue the superior court erred in finding Appellee was entitled to distributions until her Interest was acquired because she only retains a right to distributions if the remaining Members "fail to 'timely' pay the buyout price." This argument is premised on the last sentence of Section 9.1 of the Agreement: "If the remaining Members fail to exercise such option within the time limit provided herein, the rights of the [withdrawing Member] shall be as set forth in Section 8.2 hereof." Section 8.2, in turn, provides that a withdrawing Member who owns an Interest "shall cease to have any rights of a Member except only the right to receive the distributions and allocations of taxable income or loss to which the

affected Member would have been entitled under this Agreement with respect to his or her Interest" until the withdrawing Member's Interest is acquired by the remaining Members. Importantly, Section 8.2 provides that a withdrawing Member's right to receive distributions remains in place "following *any* Event of Withdrawal." (Emphasis added.)

¶16 A contract is to be interpreted in a way that will "harmonize all of its parts, and apparently conflicting parts must be reconciled, if possible, by any reasonable interpretation." *U.S. Insulation, Inc. v. Hilro Const. Co., Inc.*, 146 Ariz. 250, 259 (App. 1985). A "standard of reasonableness" applies "to contract language." *Malad, Inc. v. Miller*, 219 Ariz. 368, 371 ¶ 17 (App. 2008). Contract terms are to be considered "in view of the surrounding circumstances," and courts are not "to abandon common sense and experience or to ignore the surrounding circumstances of an agreement." *Miller v. Hehlen*, 209 Ariz. 462, 466 ¶ 12 (App. 2005) (citations and quotations omitted); *accord AZTAR Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 469 ¶ 17 (App. 2010) ("In construing a contract, we 'give words their ordinary, common sense meaning.'") (citation omitted). Construed with these standards in mind, the last sentence of Section 9.1 does not mean what Appellants claim it means.

¶17 Appellants argue the last sentence of Section 9.1 means the right to distributions under Section 8.2 is only applicable if the remaining Members fail to exercise their option to purchase the withdrawing Member's Interest in a timely fashion. Stated differently, Appellants argue that they timely exercised the option, meaning the last sentence of Section 9.1 does not apply by its terms, but that given the mere existence of the provision, a withdrawing Member is entitled to distributions for owning their Interest only if the last sentence of Section 9.1 applies.

¶18 This strained interpretation ignores the fact that Article 8 (addressing admission and withdrawal of Members) and Article 9 (addressing transfer of Interests) deal with different rights. There is no indication that Article 9 is intended to create a forfeiture of the broad rights set forth for all Members who withdraw (regardless of cause) to continue to receive distributions for owning their Interest under Article 8. *See U.S. Insulation, Inc.*, 146 Ariz. at 259 (directing courts to interpret contracts to reconcile even apparently conflicting parts). Moreover, it ignores that Article 8 expressly applies to *any* type of withdrawal. Finally, it ignores the specific, express definition of "Interest" contained in Section 1.8(p) of the Agreement:

> "Interest" in the Company shall mean the economic rights of a Member and its permitted assignees and successors to share in distributions of cash and other property from the Company pursuant to the Act and this Agreement, together with its allocable share of the Company's Profits or Losses and net income or loss for federal and state income taxes.

The right to "share in distributions" is a right associated with Interest ownership. Given that, the right to share in distributions is one of the benefits an owner of an Interest retains until ownership has been transferred. Additionally, Section 8.1 provides that no Member may be admitted without written consent or approval of all Members "regardless of whether such [p]erson has acquired an Interest in the Company." Reading Article 8 in conjunction with the definition of "Interest," it is clear that owning an Interest with corresponding distribution rights is independent from, and a different right than, being a Member with defined management rights.

¶19 To be sure, the last sentence of Section 9.1 could have been written more clearly. That said, the more reasonable construction of that provision is that it clarifies that the rights of a withdrawing Member (who withdraws by retirement or voluntarily) are at least as great as those of any other withdrawing Member. This interpretation of Section 9.1 makes plain that a withdrawing Member who also owns an Interest does not surrender the right to distributions (a subset of the rights accompanying the ownership of an Interest) even if the remaining Members do not timely exercise the option to purchase the withdrawing Member's Interest. And nowhere does Section 9.1 purport to expressly trump the more specific (Section 1.8(p)) and the more general (Section 8.2) provisions in the Agreement defining the rights associated with owning an Interest (including the right to distributions) for a withdrawing Member.

¶20 Accepting Appellants' argument also would lead to bizarre results. Appellants argue that the last sentence of Section 9.1, which is expressly limited to Members who "retire or withdraw voluntarily," means that the distribution rights for owners of an Interest discussed under Section 8.2 are forfeited, unless the remaining Members fail to timely exercise their option to purchase the Interest. Under this interpretation, Members who withdraw other than by retirement or voluntarily (ranging from death to expulsion because, hypothetically, they stole money from Resolute) would not forfeit their rights to distributions as owners of an

Interest under Section 8.2. Such an interpretation -- resulting in forfeiture of distributions for voluntary withdrawals but providing no such forfeiture for forced withdrawals that are the result of wrongdoing -- would be unreasonable and contrary to the directive that this court is not "to abandon common sense and experience or to ignore the surrounding circumstances of an agreement." *Miller*, 209 Ariz. at 466 ¶ 12.

**¶21** The pre-dispute conduct of the parties provides further guidance. *Prudential*, 140 Ariz. at 266 ("The acts of the parties themselves, before disputes arise, are the best evidence of the meaning of doubtful contractual terms."). After Appellee withdrew, Resolute made several payments to her, totaling $60,000, that the superior court found were distributions resulting from Appellee's ownership of an Interest. Rejecting Appellants' arguments to the contrary, the court found those payments were distributions and not payments to purchase her Interest. Although Appellants claim the court should have found otherwise as a factual matter, they have not shown these findings were erroneous. *See In re Estate of Zaritsky*, 198 Ariz. 599, 601 ¶ 5 (App. 2000) (findings of fact will not be set aside "unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses"). On these facts, the court did not err in concluding Appellants understood that Appellee was entitled to distributions until her Interest was acquired. *See Prudential*, 140 Ariz. at 266.

**¶22** Quite apart from these reasons, even if Appellants' interpretation of Section 9.1 prevailed, the superior court did not err in concluding Appellee had a right to distributions until her Interest was acquired. The parties did not successfully complete the process set forth in Article 9 to acquire Appellee's Interest. Although Appellants argue this failure constitutes a breach by Appellee, Appellants also had affirmative obligations to invoke Section 9.1 and then perform as required. The record indicates Appellants failed to do so, including failing to secure an appraiser required by Section 9.3.[7] As a result, the superior court looked to Article 9 as a proxy to determine the value of Appellee's Interest, but did not find

---

[7] Appellants argue that when one of the two required values for Resolute's assets (book value) became available, the value for Appellee's Interest had been calculated. However, it is undisputed that the second of the two values (appraised value, to be determined pursuant to Section 9.3) was never calculated, and the purchase price under Section 9.1 was based on the lesser of those two values. Accordingly, although the book value provided a ceiling, because the second value was never calculated, it did not constitute the value upon which the purchase of Appellee's Interest could be calculated under Section 9.1.

that Appellants properly complied with that provision. As noted above, Appellants do not challenge that portion of the judgment awarding Appellee $60,000 for her Interest and, in fact, paid that amount and her Interest transferred to the remaining Members soon after entry of judgment. Because that portion of the judgment is now final, Appellants will never be able to timely exercise their option under Article 9. Thus, even under Appellants' reading of Section 9.1, because they "fail[ed] to exercise such option within the time limit provided" in that provision (and can now never do so), Appellee's "rights . . . shall be as set forth in Section 8.2," which includes the right to distributions until her Interest transferred to Appellants. On this record, Appellants have not shown error in finding Appellee was entitled to distributions until her Interest was acquired by the remaining Members.

### C.     The Superior Court Did Not Err In Rejecting Appellants' Estoppel Defenses.

¶23     Appellants argue the superior court erred in rejecting their equitable estoppel defense, asserting they "were fully justified in relying on [Appellee]'s own statements that she had already been paid $60,000." Appellants argue that the $60,000 received from Resolute as distributions by mid-September 2013 was, in fact, payments by Appellants to Appellee for her Interest. The court, however, found otherwise and this court will not re-weigh the evidence, particularly where, as here, there was conflicting evidence. *See Zaritsky*, 198 Ariz. at 601 ¶ 5.

¶24     As Appellants concede, equitable estoppel requires that the purported inducement "results in acts in justifiable reliance thereon." *Carlson v. Arizona Dep't of Econ. Sec.*, 184 Ariz. 4, 5 (App. 1995). The superior court found Appellants had not shown such reliance, noting they purported to rely on a proposal they did not accept that was contrary to the express language of the Agreement. Appellants have not shown the court, as the finder of fact, erred in concluding that their claimed reliance was unreasonable, meaning equitable estoppel did not apply. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 537 ¶ 10 (App. 2004) (questions of estoppel are fact-intensive and this court will "defer to the trial court with respect to any factual findings explicitly or implicitly made,

affirming them so long as they are not clearly erroneous, even if substantial conflicting evidence exists").[8]

¶25        Appellants argue the court also erred in rejecting their promissory estoppel defense. "[P]romissory estoppel rests upon a promise to do something in the future." *Trollope v. Koerner*, 106 Ariz. 10, 18 (1970). The court found "[t]here was no evidence that [Appellee] promised to decline her Section 8.2 right to her membership [I]nterest." On the record presented, Appellants have not shown this finding was clearly erroneous. *See Health Corp.*, 208 Ariz. at 537 ¶ 10.

### D.        The Superior Court Properly Found Appellee Was The Prevailing Party.

¶26        Appellants argue that, because they had previously offered Appellee more than $60,000 as a buyout, and the judgment values her Interest at $60,000, they were the prevailing parties, meaning she is not the successful party under A.R.S. § 12-341.01.

> In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. If a written settlement offer is rejected and the judgment finally obtained is equal to or more favorable to the offeror than an offer made in writing to settle any contested action arising out of a contract, the offeror is deemed to be the successful party from the date of the offer and the court may award the successful party reasonable attorney fees.

A.R.S. § 12-341.01(A).

¶27        Appellee correctly notes that Appellants did not raise this argument with the superior court and, accordingly, it is deemed waived. *See Continental Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386 ¶ 12 (App. 2011); *Schurgin v. Amfac Elec. Distribution Corp.*, 182 Ariz. 187, 190 (App. 1995). As a result, the judgment properly found

---

[8] Nor have Appellants shown Appellee's purported silence mandated the court to find equitable estoppel applied. "To make the silence of a party operate as an estoppel, there must have been a duty to speak." *Ray v. First Nat. Bank of Ariz.*, 88 Ariz. 337, 341 (1960). Appellants have not shown how it was Appellee's duty to tell them about a right set forth in the Agreement.

Appellee was the successful party and awarded her reasonable attorneys' fees under this statute.

## II.     Appellee Failed To Prove An Actionable Conversion Claim.

**¶28**     Under Arizona law, a conversion claim for money is cognizable only if the funds "can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91 (1973). Appellee's conversion claim fails to meet this standard. As Appellants correctly argue, "[Appellee] *never even argued* (and the Trial Court did not hold) that her unpaid distributions were 'described, identified or segregated' with sufficient particularity to qualify for a conversion claim."

**¶29**     On appeal, Appellee relies largely on *Koss Corp v. American Exp. Co.*, 233 Ariz. 74 (2013). In *Koss*, a Koss employee embezzled millions of dollars from Koss and used it to pay various American Express bills. *Id.* at 77 ¶ 3. Koss sued American Express for conversion "based on its control over Koss funds transferred by the wire transfers and cashier's checks." *Id.* at 78 ¶ 6. In reversing the superior court's dismissal and remanding, this court stated the embezzled funds could be the subject of conversion because "[t]he money was segregated and described by the amounts of the checks." *Id.* at 90 ¶ 55. Appellee has not shown how *Koss* stands for the proposition that her conversion claim -- seeking payment from the general coffer of Resolute in fungible dollars -- is properly cognizable under Arizona law. *See, e.g.*, *Stokes v. Stokes*, 143 Ariz. 590, 594 (App. 1984) (rejecting conversion claim where "husband's failure to pay to the wife one-half the amount of his monthly check created a debt which could have been discharged by payment of money generally").[9]

## III.     The Constructive Trust Imposed Is Moot.

**¶30**     Appellants argue the constructive trust imposed in the judgment was "to generally freeze all of the assets of all defendants to allow enforcement of a money judgement." Appellee responds the constructive trust was limited to the $60,000 payment for her Interest, adding that such payment "has since been paid and, therefore, the issue of the constructive

---

[9] Given this conclusion, the court need not, and expressly does not, address Appellants' argument that the conversion claim is barred by Arizona's economic loss doctrine. *See Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 323 ¶ 12 (2010).

trust is moot." Because the constructive trust is now moot, that portion of the judgment imposing the constructive trust is vacated.

## IV. The Court Did Not Err In Finding For Appellee on Appellants' Fiduciary Duty Counterclaim.

¶31　　　Appellants press two arguments about the superior court's fiduciary duty findings: (1) the court erred in finding the parties did not owe each other a fiduciary duty, and (2) the court erred in rejecting their fiduciary duty counterclaim on disclosure grounds.

¶32　　　As for the first argument, the parties concede that, pursuant to Section 3.1(b) of the Agreement, Members owe each other and Resolute a fiduciary duty. The superior court's statement to the contrary was in error.

¶33　　　Turning to the second argument, however, Appellants are incorrect. In finding for Appellee on the fiduciary duty counterclaim, the superior court found Appellants "did not disclose a computation or evidence of damages in support of their breach of contract and breach of fiduciary duty claims." Accepting that as true, such a statement does not mean that Appellants properly disclosed those claims. The record on appeal does not reflect any timely proper disclosure by Appellants of such damages. *See* Ariz. R. Civ. P. 26.1(a)(7); *SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 284 ¶ 50-52 (App. 2011) (vacating damages because, although the party's disclosure statements referred to generally related things, it never revealed the amount of damages it would seek).

¶34　　　Apart from the lack of timely disclosure, Appellants proved no damages. They assert "[Appellee] held her 1/3 interest as an active member serving as Resolute's CFO, yet performed none of these services after September, 2013. [Appellee] cannot claim the benefits of the Agreement when she was not acting as a [M]ember or as a fiduciary." Appellants then claim, as resulting damages, Appellee: (1) began working somewhere else and formed her own company; (2) did not follow the "appraisal and valuation protocols" in the Agreement; (3) rejected Appellants' buyout offer and (4) filed a lawsuit. Appellants, however, have not shown how these facts mandated a finding that Appellee breached her fiduciary duty and damaged Appellants separate and apart from Appellants' breach of contract claims, which the court found were not supported. Additionally, Appellants do not quantify and do not purport to properly quantify any resulting damages.

¶35            In their reply brief and in oral argument before this court, Appellants argue that a failed fiduciary duty counterclaim must be treated as an affirmative defense. Appellants have not argued they "mistakenly" designated their fiduciary duty claim a counterclaim when, correctly viewed, it should have been an affirmative defense. *See* Ariz. R. Civ. P. 8(c)(2). Even if they had shown such a mistake, that does not mean the court was mandated to treat a failed counterclaim as an affirmative defense. *See* Ariz. R. Civ. P. 8(c)(2) (providing court discretion "on terms, if justice so requires," to treat a mistakenly designated counterclaim as an affirmative defense). Moreover, on this record, Appellants have not shown what would have changed even if the court had done so. The first two alleged facts relied upon by Appellants in their counterclaim (demanding excessive payments and taking money under a false pretense) were a part of the breach of contract claims the court resolved in favor of Appellee as a factual matter. The next alleged fact (competing with Resolute) is not supported as a factual matter and Appellants have not shown how the final alleged fact (demanding an accounting of JPM and Propaganda) would constitute a fiduciary duty breach.

¶36            On this record, Appellants have not shown the court erred in addressing their fiduciary duty counterclaim. *See SWC Baseline & Crismon Inv'rs, L.L.C.*, 228 Ariz. at 284 ¶ 47.

## V.    Appellants Have Not Shown The Superior Court Abused Its Discretion In Denying Their Motion For New Trial.

¶37            Appellants argue because the superior court's ruling "contained numerous errors," it should have granted their motion for new trial. As applicable here, a new trial may be granted if "the verdict, decision, findings of fact, or judgment is not supported by the evidence or is contrary to law." Ariz. R. Civ. P. 59(a)(1)(H). To the extent the "numerous errors" claimed by Appellants are addressed above, Appellants have shown no abuse of discretion in the denial of their motion for new trial. *See Summers v. Gloor*, 239 Ariz. 222, 225 ¶ 10 (App. 2016) (noting "decision denying a motion for new trial" is reviewed "for an abuse of discretion"). To the extent Appellants claim "numerous additional errors in the conclusions of law and the manner in which it is applied against all" defendants, Appellants have failed to support any such arguments, which are now waived. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011) ("[m]erely mentioning an argument in an appellate opening brief is insufficient," and doing so constitutes abandonment and waiver).

## VI. Attorneys' Fees.

**¶38** Appellants correctly argue that the judgment does not specify against whom the award of attorneys' fees is imposed. In objecting to the form of judgment, Appellants argued that attorneys' fees should be imposed against Propaganda and JPM only, a point Appellee conceded. Accordingly, the judgment is modified to reflect that the award of attorneys' fees is against JPM and Propaganda.

**¶39** Appellants and Appellee request attorneys' fees on appeal pursuant to A.R.S. § 12-341.01, and Appellee requests taxable costs on appeal. Because they are not the prevailing parties on appeal, Appellants' request for fees is denied. Appellee's request for an award of reasonable fees incurred on appeal against JPM and Propaganda, and for taxable costs incurred on appeal against Appellants, is granted, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶40** That portion of the judgment for Appellee on her conversion claim is vacated; that portion of the judgment imposing a constructive trust is vacated as moot and the judgment is modified to reflect that the award of attorneys' fees imposed in favor of Appellee is against defendants JPM and Propaganda only. The remainder of the judgment is affirmed.

